# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## Rudd's Adm'r v. R. & D. Railroad Co.

### June 18th, 1885.

1. Practice at Law—*Demurrer to evidence.*—It is well settled that by demurrer to the evidence, the demurrant admits the truth of all demurree's evidence, and all proper and reasonable inferences therefrom, and waives all his own evidence which is in conflict with, or tends to make a case different from the case of demurree's evidence. *R. & D. R. R. Co.* v. *Moore*, 78 Va. 93.

2. Negligent Injuries—*Contributory negligence—Compensation.*—Compensation cannot be recovered for injuries done by defendant's mere negligence, where plaintiff by his own ordinary negligence contributed to cause the injury, so that but for such contribution the injury would not have happened, except when the direct cause of the injury is the defendant's omission (after becoming aware of plaintiff's negligence) to use proper care to prevent the consequences of such negligence. *R. & D. R. R. Co.* v. *Anderson*, 31 Gratt. 812.

3. Idem—*Case at bar.*—Boy of twelve, sent by parents to mind cows in field along railway, lay asleep on the track, and was run over by freight train 375 yards long, and killed. Train was running down grade without steam. Boy was lying, when struck, 226 yards from a public crossing, which was 892 yards from a curve from which boy was visible. Boy had been repeatedly found sitting and lying down and asleep on the track, and warned. When engineer saw boy on track, he made, in vain, every effort to stop train, by reversing engine, etc. On demurrer to evidence, court below decided for defendant company. On appeal :

Held:

Plaintiff's evidence is insufficient to warrant the verdict.

Argued at Richmond, and decided at Wytheville.

Error to judgment of circuit court of Nottoway county, rendered 6th April, 1883, in an action wherein Joseph E. Leath, administrator of Charles E. Rudd, deceased, was plaintiff, and the Richmond and Danville Railroad Company was defendant. The object of the action was to recover damages for the alleged negligent killing of Rudd, an infant aged twelve, by the defendant. At the trial the jury found for the plaintiff $4750 damages, subject to the defendant's demurrer to the evidence. On that demurrer the judgment was for the defendant, and the plaintiff obtained a writ of error from one of the judges of this court.

Opinion states the case.

*Edgar Allan, P. W. McKinney* and *F. S. Blair*, for the plaintiff in error.

*H. H. Marshall*, for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This suit is an action of trespass on the case against the said railroad company for the negligent killing of the deceased Charles E. Rudd, laying the damages at $10,000.

Upon the trial in the court below, after the jury had heard all the testimony for the plaintiff and defendant, the said defendant demurred to the testimony as being insufficient in law to maintain the issue joined, of not guilty; the plaintiff joined in the said demurrer: whereupon the issue was submitted to the jury to say, what damage the plaintiff had sustained by reason of the matters shown in evidence, in case the judgment of the court should be given for the plaintiff; and the jury, after considering the same, returned into court and rendered their verdict, to-wit: "We, the jury, assess the damages of the plaintiff at forty-seven hundred and fifty dollars, ($4750) subject to

the opinion of the court upon the demurrer of the defendant to the evidence in this case."

And, thereupon, the court passed judgment sustaining the demurrer of the defendant to the evidence in the case, and dismissed the plaintiff's suit with costs, etc.   To which judgment the plaintiff excepted.

The case comes up on a demurrer to evidence, and the single error assigned, is that the circuit court erred in sustaining the defendant's demurrer to the plaintiff's testimony, because said testimony was sufficient in law to render the said defendant company liable for the damages awarded by the jury, by reason of its gross negligence, which was the proximate cause of the death of the deceased.

On the 28th day of May, 1882, the deceased, Charles E. Rudd, a boy 12 years of age, who had been sent by his parents to mind cows in a field running alongside of the track of defendant's railroad, in Nottoway county, Virginia, was run over and killed by a train of loaded and unloaded freight cars, consisting of a locomotive and tender, and thirty-six cars, making a train about 375 yards in length, belonging to and operated upon the said defendant's railroad, in Nottoway county, Virginia, about two miles from Burkeville, in said county, the said Rudd being at the time lying across the said track, apparently asleep.   The said train being on a heavy down-grade, had, at the time of the killing, been running without steam, and of its own momentum, for a distance of one and a-half miles, and would have continued so to run for two miles further.   The said train turned around a curve in the line of the road, 1118 yards from where the boy was struck, and passed a public crossing 226 yards further on, or 892 yards before reaching the body of the boy.   The boy had been repeatedly found on the track, sitting and lying down and asleep, at various times previous to the killing, and had been warned and expostulated with by various persons as to the danger of falling asleep and being run over and killed

by the trains.   He himself had narrated an escape that he had made from being killed by a passing train when he was lying down by the side of the track asleep, only about a week before he was killed.

It appears, from the plaintiff's evidence, that an experiment made with a boy about 12 years of age, and of the size of the deceased, showed that an object of that size could be seen on the road at the distance of 1118 yards from the curve or turn in the road.

These facts present the case of contributory negligence by the plaintiff; and negligence both contributory and concurring at the time and in the causation of the killing.

The judgment under review having been rendered upon a demurrer to evidence, the familiar and settled rule applies : that the demurrant admits the truth of all the demurree's evidence, and all proper and reasonable inferences therefrom, and waives all his own evidence which is in conflict with or tends to establish a case different from that of the demurree's evidence.

The plaintiff has made his own case; and the gravamen against the defendant is, a charge of gross negligence.   The law will not impute it: the plaintiff must prove it.

The defendant company was in the exercise of its lawful rights and the discharge of its public duties, and was upon its own exclusive premises; while the plaintiff's intestate was unlawfully and negligently upon the track of the defendant—not at a station, or a public crossing; but at a portion of the track where defendant had a right not to expect or apprehend any person to be—certainly not lying down and asleep.

A railroad company does not bear the same legal relation to a stranger, trespassing upon its road-bed and highway, at unaccustomed and unappointed portions of its route, as it does to *a passenger;* and, though it may not kill or injure, with impunity, even a trespasser unlawfully upon its track, at any point or in any way, if by ordinary care it may avoid so doing; yet, in the language of this court, in the case of *Dunn* v. *Seaboard*

*and Roanoke Railroad Co.,* 78 Va., *Judge Lacy* delivering the opinion of the court, "the extent of a person's duties is to be determined by a consideration of the circumstances in which he is placed. The law imposes duties upon men according to the circumstances in which they are called to act."

It is undeniably true, as alleged by counsel for the appellant, that a wrong-doer or trespasser upon the road and the rights of the defendant, is not an *outlaw,* to be run over, injured or killed with impunity, without the exercise of ordinary care and caution by the railroad company or its employees; yet, it is equally true, that railroad companies, in the exercise of their legal rights and duties, upon their own ground and highways, are under the protection of the law, against speculative suits, and excessive verdicts for damages, for injuries *caused by the equally proximate and concurring negligence* of trespassers and wrong-doers. It is admitted in the declaration in this case, that the plaintiff's intestate was asleep upon the track of defendant's road; and the evidence shows, that he had been repeatedly, and by sundry persons, warned of the extreme danger of putting himself in such a situation; and the declaration does not charge, that the defendant either knew of this contributory and co-operating negligence and fault of the plaintiff's intestate, or that the said defendant intentionally inflicted the injury, or did not use all possible care and caution to avoid it, *after it saw the situation and became aware of the danger.* The general charge is, *negligence* in using and operating the said road.

The *plaintiff's* own testimony, out of the mouth of his own witness, Elam Blankenship, who was the engineer running the train (and who had been for seventeen years an engineer) shows distinctly and emphatically that the defendant company used every means in its power to give warning to this boy, who was unlawfully and improperly asleep on its track, of the approaching train; and that it used every effort and appliance in its power to stop the train and prevent it from striking the boy. He says: "I was on schedule time when I struck the boy.

When I first saw the boy, I blew the whistle quickly, as I would for cattle, and reversed the engine; and I blew the whistle for brakes ten or twelve times during the time my engine remained reversed till the train stopped. I reversed the engine as soon as I saw the object on the track. I always reverse the engine when I see something on the track. I had on that day thirty-six cars behind the engine. It would take me to stop the train moving at the rate it was going, and on that grade, and the train being composed of the number of cars I had, just as long as it took me to stop that day. I stopped just as soon as I could—in about the length of the train after passing the boy. It is very dangerous to my own life to run over any object on the track. I am very careful to avoid doing so. I was very careful to avoid running over this boy. I used every means in my power to stop the train as soon as I saw the object on the track. I was looking out that day all the way from the curve down." This is the plaintiff's own positive testimony; and it is only contradicted or disparaged by the mere *negative* testimony of *other witnesses of the plaintiff*, who did not hear the whistle blow until after the boy was struck; and yet, there were none nearer than one-half a mile off, and others three-fourths of a mile, from the place where the boy was struck; and none of them saw the boy, the place or the train, or knew where the accident occurred; or could see it, because of distance, intervening woods and inequalities of the surface of the ground. When they heard the whistle blow, they could not see—they did not see—and they did not even know that the boy had been injured at all; and, consequently, *not the place where he was injured.* This mere negative testimony of the plaintiff cannot impeach and overcome the other clear, positive and express testimony of the plaintiff.

The case of the *Richmond and Danville Railroad Company* v. *Anderson's adm'r*, 31 Gratt. 812, was a case very similar to the case at bar. In that case, a *man* was lying upon the track and was run over and killed by the train. Judge Burks, delivering

the opinion, said, "After the engineer saw the man on the track he used all the means in his power, hazarding even the safety of the passengers, in suddenly reversing the engine to avoid injuring him. He used all the care, skill and diligence which the situation demanded, but it was then clearly not in his power to prevent the accident. But it was argued, with much earnestness, that although it might be that the engineer did not see the deceased on the track until it was too late to avoid the collision, he might and ought to have seen him when it would have been in his power to stop the train and prevent the mischief; and that, but for his negligence in not keeping a lookout, he could and would have seen him in ample time to have checked the speed of the train, and, if need be, to have stopped it entirely. It was the duty of the engineer to have watched ahead for objects on the track; * * and if, from a negligent failure to observe and perform it, an accident had occurred by which *a passenger sustained injury*, the company would have been liable for the damage to such passenger. Whether a railroad company owes this duty, under all circumstances, to persons wrongfully on its road, need not be decided in this case. The engineer testified that he was at his post, but that he did not and could not see the deceased on the track in time to prevent the collision, because his vision was affected by the rays of the sun, which, at that hour of the day, shone directly in his face. Although the sun may not have shone in the engineer's face at one or more points, yet these would have been passed in an almost inconceivably short time, the train moving with a speed of twenty or twenty-five miles per hour, and thus the deceased, in the position he occupied, may have escaped the observation of the engineer, although on the lookout for objects on the track, and therefore without fault on his part. But for the negligence, or want of ordinary care and caution of the plaintiff's intestate, the misfortune, the loss of his life, could not have happened. He was in fault in going upon the track of the railroad. The defendant was the owner in fee simple of the road, and entitled

to the full, free, *exclusive and uninterrupted use of it.* * * It is sufficient to say, that the engineer did not see the deceased on the track until it was too late, &c. If there had been no demurrer to the evidence in this case, and the jury had rendered a verdict for the plaintiff, it would have been the duty of the judge presiding at the trial to set aside the verdict, on the ground that the evidence was plainly insufficient to warrant it."

The experiment, made by plaintiff's witness, of placing a boy 12 years of age, and of about the size of the deceased, in position on the track, and then being able to see him from a point of observation 1118 yards off, when they knew that he was thus placed there, and their undertaking was *to see him,* does not prove that the deceased, lying down flat on the track, may not have escaped the observation of the engineer, even when he was at his post and on the lookout, at that great distance, and while the train was running rapidly along.

In the case of *Dunn* v. *Seaboard and Roanoke Railroad Co., supra, Judge Lacy,* after reviewing all the authorities, English and American, upon the doctrine of contributory negligence, says: "It is better, we think, to adhere to the rule, already established in this court, * * * that one who is injured by the mere negligence of another, cannot recover any compensation for his injury, if he, by his own ordinary negligence or wilful wrong, contributed to produce the injury of which he complains, so that, but for his concurring and co-operating fault, the injury would not have happened to him; except where the direct cause of the injury is the omission of the other party, *after becoming aware of the injured party's negligence,* to use a proper degree of care to avoid the consequences of such negligence." *Tuff* v. *Warman,* 5 Q. B. (N. S.) 573; *Richmond and Danville R. R. Co.* v. *Anderson's adm'r,* 31 Gratt. 812.

In *Anderson's case,* 31 Gratt. *supra,* the jury fixed the damages at $6,000; and in *Clarke's case,* 78 Va. (3 Hansbrough), 709, the jury fixed the damages at $7,500; yet, in both of these cases, this court sustained the demurrer to the evidence.

In the case under review, we think, the evidence demurred to is plainly insufficient to warrant the verdict; and that, upon the plaintiff's own evidence, there is no liability, in law, upon the defendant for the killing of the deceased, under all the circumstances in the case; and the circuit court did not err in sustaining the demurrer to the evidence and rendering judgment for the defendant; and the same must be affirmed.

LEWIS, P., and RICHARDSON, J., dissented.

JUDGMENT AFFIRMED.