# Richmond.

## JOHNSON'S ADM'R v. CHESAPEAKE & OHIO RAILWAY Co.

### MARCH 14, 1895.

1. DEMURRER TO EVIDENCE—*Joinder—Negligence.*—In a civil case either party has a right to demur to the evidence, except where the evidence is plainly against him, or the court doubts what facts should be reasonably inferred from the evidence demurred to; and where a party has the right to demur, it is the duty of the court to compel the other party to join in the demurrer. The fact of negligence constitutes no exception to the general rule. *Trout* v. *Va. & Tenn. R. R. Co.*, 23 Gratt. 619, approved.

2. DEMURRER TO EVIDENCE—*Rule Stated.*—By the demurrer to the evidence the party demurring is considered as admitting the truth of his adversary's evidence, and all just inferences which can be properly drawn therefrom by a jury, and as waiving all of his own evidence which conflicts with that of his adversary, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom.

3. CONTRIBUTORY NEGLIGENCE—*Proximate Cause.*—Where the proximate cause of the death of the decedent was his own negligence, concurring with the negligence of the defendant, there can be no recovery (by his representative). But, although the deceased may have been guilty of negligence, and that negligence may in fact have contributed to the injury, yet, if the defendant could, in the result, by the exercise of ordinary care and diligence, have prevented the injury, the action may be maintained.

4. RAILROAD CROSSING—*Negligence.*—It is the duty of one about to cross a railroad track, even at a public crossing, or a licensed way, to use his eyes and ears to avoid danger to himself. He should both look and listen, and if his faculties warn him of the near approach of a train he should keep off the track. If he fails to use these necessary precautions, and injury ensues, he cannot recover.

| | |
|---|---|
| 91 | 171 |
| 93 | 141 |
| 91 | 171 |
| 94 | 90 |
| 94 | 190 |
| 94 | 476 |
| 94 | 666 |
| 94 | 676 |
| 91 | 171 |
| 95 | 196 |
| 95 | 139 |
| 95 | 214 |
| 91 | 171 |
| 96 | 156 |
| 91 | 171 |
| 100 | 47 |
| 100 | 570 |
| 100 | 577 |
| 100 | 895 |
| 100 | 899 |
| 91 | 171 |
| 101 | 521 |
| 91 | 171 |
| 104 | 54 |
| 104 | 659 |
| 104 | 825 |
| 91 | 171 |
| 107 | 729 |
| 91 | 171 |
| 109 | 278 |
| 91 | 171 |
| 110 | 676 |

5. RAILROAD CROSSING— *Negligence.*—Prior to the enactment of the statute (March 5, 1894,) the servants of a railroad company, operating one of its trains, were required to give notice of its approach to a public crossing, and if they failed to do so and injury resulted from such failure, the company was liable therefor; but this did not relieve the person about to cross the track from the necessity of taking ordinary precautions for his own safety.

*Quære.* Upon a demurrer to the evidence, is the negative evidence of a witness that he did not hear certain sounds, in conflict with the positive evidence of another witness that such sounds were made?

Error to a judgment of the Circuit Court of Albemarle county, rendered May 24, 1894, in an action of trespass on the case wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Camm Patteson* and *S. S. P. Patteson*, for the plaintiff in error.

*Wm. J. Robertson*, *Thos. S. Martin*, *Henry T. Wickham* and *Henry Taylor*, *Jr.*, for the defendant in error.

RIELY, J., delivered the opinion of the court.

Wiley B. Johnson was killed on the 30th day of October, 1893, while on the track of the Chesapeake and Ohio Railway Company, by one of its freight trains, and this suit was brought by his administrator to recover damages from the railway company for the death of Johnson.

At the trial, after the evidence on both sides was closed, the defendant demurred to the evidence, and the court compelled the plaintiff against his protest to join in the demurrer. The amount of damages was thereupon inquired of by the

jury, which found a verdict for the plaintiff, and assessed his damages at $2,900, subject to the opinion of the court on the demurrer to the evidence. The court sustained the demurrer and gave judgment in favor of the defendant. To this judgment, a writ of error and *supersedeas* was awarded by one of the judges of this court.

The first question presented for review was the action of the court in compelling the plaintiff to join in the demurrer to the evidence. It was earnestly contended by the counsel for the plaintiff in error, both in their printed and oral arguments, that the court erred in compelling the plaintiff to join in the demurrer and thus take away from the jury, the proper triers of facts, the question of negligence, which was the result of this proceeding. The propriety and validity of the practice of demurring to the evidence is too well settled in Virginia and has been too often approved by this court to be now seriously questioned. It was elaborately discussed and maturely considered in *Trout* v. *Va. and Tenn. R. R. Co.*, 23 Gratt. 619, where Judge Moncure, the president of the court, reviewed the cases in Virginia on this subject, sustained the practice, and defined the rules which govern it. It was there held that either party has the right to demur to the evidence, except where the evidence is plainly against him, or the court doubts what facts should be reasonably inferred from the evidence demurred to; and where a party has the right to demur, it is the duty of the court to compel the other party to join in the demurrer.

The suit of *Trout* v. *Va. and Tenn. R. R. Co.*, *supra*, was brought to recover damages for the negligent killing of the stock of the plaintiff by the railroad company, and, like this case, the ground of the action was the negligence of the defendant. It was nevertheless held that this was no reason why a party should not be permitted to demur to the evidence, and that the fact of negligence constituted no excep-

tion to the general rule. That case has been repeatedly followed since, and the practice of demurring to the evidence, and compelling the demurree to join in the demurrer, unless the case is within one of the two exceptions to the general rule, is now firmly fixed in the law. *Clark's adm'r* v. *Richmond & D. R. R. Co.*, 78 Va. 709, 713. The case under review falls under the general rule and not under either of the exceptions to it, and the court did not err in compelling the plaintiff in error to join in the demurrer.

This brings us to the consideration of the demurrer to the evidence, and the review of · the judgment given thereon by the court below. The rule applicable thereto is well settled and familiar. By the demurrer, the party demurring is considered as admitting the truth of his adversary's evidence, and all just inferences which can be properly drawn therefrom by a jury, and as waiving all of his own evidence which conflicts with that of his adversary, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom. 4 Minor's Institutes, Pt. I, p. 831; 1 Barton's Law Pr. pp. 676-79; *Trout* v. *Va. and Tenn. R. R. Co.*, 23 Gratt. 619; and *Richmond & Danville R. R. Co.* v. *Anderson's adm'r*, 31 Gratt. 812.

The evidence shows that Johnson was struck and killed between nine and ten o'clock in the morning, on the track of the Chesapeake and Ohio Railway Company, by one of its freight trains, about fifteen feet from the place where the public highway crosses the track of the railroad, at the depot in the village of Howardsville, in Albemarle county, and where persons on foot were in the habit of crossing the railroad without objection from the company. The track at that place runs nearly east and west, and the train was going east. It was composed, besides the engine and tender, of forty-five loaded freight cars and a caboose car. Thirty-two of the cars were equipped with air brakes, which were in good order and

working.   Ten of the cars were without air brakes, and the four others had air brakes that were not working.   The evidence shows that the employees in charge of the train were sufficient to handle it, and that the air brakes on the thirty-two out of the forty-six cars were all that were necessary to give perfect and easy control of the train.   It was running on a regular schedule, but behind time.   Its speed was variously estimated by the witnesses, but claimed by counsel for plaintiff in their brief to be running from seventeen to twenty miles per hour, which was less than the maximum of twenty-four miles per hour permitted under the rules of the company. It was proved that freight trains habitually pass Howardsville without stopping, running at as high a rate of speed as this was running, and that this train was to pass there without stopping.   As was customary, the whistle for the station was blown at the whistling post about half a mile west of the station, but neither the whistle was again heard by any of the witnesses of the plaintiff, nor was the car bell heard by them to ring, as the train approached the public crossing and the station at Howardsville before Johnson was struck; while on the other hand, the officers and men in charge of the train testified that the whistle was not only blown for the station, as was usual, but that, after coming in sight of the signals displayed from the telegraph office, the whistle again gave two sharp blasts to indicate that the track was clear so that the train could continue on.

At the time the whistle was blown for the station, Johnson was standing at the gate of his son-in-law, S. S. Bugg, where he had been talking with Eldridge Turner, who walked to the south side of the track and engaged in conversation with Dr. Nash and Jos. R. Noel, two of the witnesses for the plaintiff. Near Johnson and Turner, where they were talking, was the buggy of a Mr. Pulling, with a young man sitting in it. Pulling was on the south side of the track, and when he heard

the whistle he called to the young man to drive to where he was that he might help him to hold the horse while the train passed. The young man drove the horse and buggy to where Pulling was, and Johnson remained standing at the gate.

Bugg's gate was, according to measurement, one hundred and five feet north of the track of the railroad where the public road crosses it; and from the gate to the crossing, the view of the track and of any train moving upon it from the west was wholly unobstructed for two hundred and sixty-five yards, so that by the use of his faculties Johnson could have clearly seen the train as it approached the crossing, and the engineer and fireman could have seen him for the same distance, after he came within fifteen or twenty feet of the track, if they were at their posts and performing their duties. After Johnson was seen standing at Bugg's gate, his movements seem not to have been observed by any one until the train was approaching the public crossing and station, when he was seen walking slowly in the direction of the track. He continued to walk on towards the track and stepped upon it, as if to go across it. He was then in front of the train as it approached the crossing, and before he could clear the track he was struck and instantly killed. These were the circumstances, so far as they are material, under which he met his death, and the inquiry is whether the defendant is liable therefor in damages.

If the death of Johnson was caused solely by the negligence of the defendant, there can be no doubt of the right of the plaintiff to recover damages therefor. If, however, the proximate cause of his death was his own negligence concurring with the negligence of the defendant, there can be no recovery. But although the deceased may have been guilty of negligence, and that negligence may, in fact, have contributed to the accident, yet, if the defendant could, in the result, by the exercise of ordinary care and diligence, have prevented

the injury, the action may be maintained.  *Richmond &*
*Danville R. R. Co.* v. *Anderson's adm'r*, 31 Gratt. 812; *R.*
*& D. R. R. Co.* v. *Morris*, 31 Gratt. 200; *Dun* v. *Seaboard*
*& Roanoke R. R. Co.*, 78 Va. 645; *Rudd's adm'r* v. *R. &*
*D. R. R. Co.*, 80 Va. 546; *Farley's adm'r* v. *R. & D. R.*
*R. Co.*, 81 Va. 783; and *Virginia Midland R. R. Co.* v.
*Barksdale's adm'r*, 82 Va. 330.

It was claimed by the counsel for the plaintiff in error that
the defendant was negligent in running a train as long and
heavy as this one was through a village of the size of How-
ardsville, which contained from one hundred and fifty to two
hundred inhabitants, at a high rate of speed without having
more than two brakemen and air brakes cn all the cars.
There was no evidence on the part of the plaintiff to show
that the train did not have the necessary brakemen and air
brakes to control it as occasion or emergency might require,
or that it was not under perfect control; while it was proved
by the defendant that the brakemen and the air brakes were
fully sufficient to handle and control it.

But the main contention of the counsel for the plaintiff was
that the defendant was guilty of negligence in that, as they
claimed, the whistle was not blown and the bell rung as the
train approached the crossing.  While at the time this acci-
dent happened there was no statute in this State which re-
quired the whistle to be blown as a train approached a public
crossing, as is now the case (act approved March 5, 1894),
yet it was then required that a railway company should give
notice of the approach of its trains to a public crossing, and
if it failed to do so and injury resulted from such failure, it
would be liable therefor.  It is not shown that the approach
of the train to the crossing where Johnson lost his life was
not announced both by the whistle and bell.  The witnesses
for the plaintiff only testified that they did not *hear* either
the whistle or bell.  Whether this was from inattention, or

because it was not done, does not appear from the evidence of the plaintiff, while the engineer and fireman and other witnesses of the defendant, were positive that both the whistle was blown and the bell rung after the train crossed Rockfish river and came in sight of the crossing. Without deciding whether upon a demurrer to the evidence, the negative evidence of a witness that he did not hear such sounds is in conflict with the positive evidence of another witness that such sounds were made, it may be conceded, for the purposes of this case, that the whistle was not blown, except at the whistling post for the station, and that the bell was not rung at all. If such were the fact, it did not relieve the deceased from the necessity of taking ordinary precautions for his own safety. Negligence of the employees of the defendant in this respect was no excuse for negligence on his part. The day was clear and still. And Johnson, while an old man, was in good health, and in possession of all his faculties. His sight and hearing were unimpaired. While he was standing at Bugg's gate the whistle for the station was blown. It was distinctly heard by the persons in and about the station and crossing. The plaintiff examined eight witnesses in the court below. Six out of the eight stated that they were duly advised and warned of the approaching train. One of them, Dr. Nash, stated that he did not hear either the whistle or bell, but heard the rumbling of the train, and by it and the sight of the train was amply warned. Four others, J. R. Noel, G. W. Spencer, Otho V. Carter, and John Johnson stated that they heard the whistle west of Rockfish river when it was blown for the station. Another of them, Howell Lewis, who was about four hundred yards off, riding to the village on horseback, saw the train, but did not hear either the whistle or bell. S. S. Bugg was in his storehouse about one hundred yards from the track and did not hear either bell or whistle; and the remaining witness for the plaintiff, G. W. Clay, was

not examined on this point.    The evidence of these witnesses for the plaintiff established clearly that the whistle was blown, and that those persons in the vicinity of the crossing and near to Johnson were fully warned of the approaching train.

While it was the duty of the defendant to give notice of the approach of the train to the crossing, and it thus appears that this was done sufficiently to warn persons who, like Johnson, were in proximity to it, there were also reciprocal duties imposed on him.    He could not go upon its track even at a public crossing, or a licensed way, without exercising ordinary care and caution.    The track itself was a proclamation of danger.    It was his duty before going upon it to use his eyes and ears.    He should have both looked in either direction from which a train could come, and listened; and if his faculties warned him of the near approach of a train, it was his duty to keep off the track.    If he had done so in this instance he could not have failed to hear and see the coming train, and be made sensible of the danger of going upon the track.    It was in plain view.    And if he failed to look and listen, as duty required of him, and attempted to cross the track in front of a rapidly moving train, and was caught before he could get across and was killed, his own act, his own negligence, so contributed to the injury, that a recovery therefor cannot be sustained.    *N. Y., P. & N. R. R. Co.* v. *Kellam's adm'r*, 83 Va. 851; *Mark's adm'r* v. *Petersburg Railroad Co.*, 88 Va. 1; *N. & W. R. R. Co.* v. *Stone's adm'r*, Id. 310; *Grand Trunk Railway Co.* v. *Ives*, 144 U. S. 408 and 431; 4 Amer. & Eng. Enc. of Law, 68-78; *Ernst* v. *Hudson River Railroad Co.*, 39 N. Y. 61 and 68; *Railroad Co.* v. *Houston*, 95 U. S. 697; *Schofield* v. *Chicago & St. Paul Rwy. Co.*, 114 U. S. 615; *Wendell et al.* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 420, 428; *The Maryland Central R. R. Co.* v. *Conrad Aeubeur*, 62 Md. 391, 400; *Gothard* v. *Ala. G. S. R. R. Co.*, 67 Ala. 115; *Hogan's*

*adm'r* v. *Tyler*, 17 S. E. R. 723; Beach on Con. Neg., secs. 63 and 64; and Whittaker's Smith on Negligence, p. 401 and note.

Only four witnesses testified to the movements of the deceased, which immediately preceded the accident. The witness, John Johnson, who testified for the plaintiff, was standing on the platform of the depot, and saw the deceased when he approached the track and was struck by the engine. He stated, in his examination-in-chief, that when the deceased made the attempt to go across the track, the train was about one hundred yards from him, as near as the witness "could come at it;" and on cross-examination, he admitted that the engine was so close to the deceased, when he started to go upon the track, that the witness thought that he was bound to be killed if he went on the track; and that when he got on the track he was so close to the train that he thought it was impossible to stop it in time. It was manifest from the evidence of this witness, who was the only witness for the plaintiff who saw Johnson when he was struck and killed, that the train was quite near the crossing and to Johnson when he started to go across the track. While the witness thought the train was then about one hundred yards away, it appears that he was not and could not be certain of the distance, but was certain that Johnson would be killed if he went on the track and that the train could not be stopped so as to prevent it.

There were three witnesses for the defendant who saw Johnson at the time the accident occurred and their evidence is not in conflict with that of the witness Johnson. R. S. Wilkinson, the depot agent, and T. A. Jones, the section master, were in the telegraph office when they were apprised of the approach of the train. They looked in the direction from which it was coming, and it was then in sight. While looking at it they saw the deceased walking directly toward the

track; and without stopping or looking up or down the track, but, with his head down, he kept straight on and was struck by the engine before he could get across. The fireman, F. Foster, was on the left side of the engine, the side on which Johnson was walking towards the track. It was proved both by himself and the engineer that they were at their post of duty, and looking out ahead of the train. The fireman stated that when he first saw the deceased he was about fifteen feet from the track and walking towards it, and he supposed that he, like other persons were in the habit of doing at crossings and stations, would "walk up to where the train would clear him and then stop," but instead of stopping, he kept on, stepped on the track, and was struck by the engine; that his stepping on the track and being struck by the engine all occurred in a moment of time; and that there was no opportunity whatever to warn the deceased, or to attempt to stop the train. The engineer was at his post on the right side of the engine, while Johnson approached the track from the left side and went upon it so near in front of the train that the engineer was unable to see him, until he was struck by the engine and knocked across on to the platform on the right side of the track.

Upon the face of the evidence, under the strict rule applicable to its consideration, it conclusively appears that the deceased, by his own negligence and recklessness, directly and proximately contributed to the act which caused his death, and that it was not in human power to save him after it took place. He was the author of his own misfortune.

If the evidence of all the persons who were eye-witnesses to the unfortunate accident and have testified in this case, except that of John Johnson, who testified in behalf of the plaintiff, is wholly laid out of view, his testimony establishes beyond all question such contributory negligence on the part of the deceased as to preclude all recovery of damages for his

death.    He proves that the deceased was not on the track until he started across it and was struck and killed.    He was not walking on and along the track.    He was not in the way of the moving train, nor in danger, until he started to walk across the track, and when he did go upon the track, it was to attempt to go right across it; and whether the estimate of the witness, Johnson, is correct or not, that the train was about one hundred yards distant when the deceased essayed to cross the track, certain it is that he did not stop or linger on the track, yet that he went on it in front of the engine, and when it was so close to him that, narrow as the track is, the engine struck him before he was able to cross it.    This fact in itself is conclusive that, when he stepped upon the track, the engine was so close upon him, it was inevitable that he would be struck, and no effort or act of the engineer or fireman could prevent it.

For these reasons the court below did not err in sustaining the demurrer to the evidence, and in giving judgment in favor of the defendant.

The plaintiff being, therefore, precluded by the contributory negligence of his intestate from recovering damages from the defendant, he was not prejudiced by the refusal of the court to allow the witness to answer the question which is the subject of the first bill of exception, nor by the refusal of the court to give to the jury the instructions asked for by the plaintiff after the joinder in the demurrer to the evidence; and consequently it is unnecessary to pass upon them.

The judgment of the Circuit Court of Albemarle county is therefore affirmed.

AFFIRMED.