## Staunton.

### THE SOUTHERN RAILWAY COMPANY V. BRYANT'S ADM'R.

#### SEPTEMBER 23, 1897.

1. RAILROADS—*Public Crossings—Warning—Virginia Statute.*—Independently of any statute, it is the duty of a railroad company to give timely warning of the approach of its trains to the crossing of a public highway. While the company has the right of way at public crossings, it must give timely warning of the approach of its trains. This duty is emphasized by statute in Virginia. Acts 1893-4, p. 824.

2. RAILROADS—*Public Crossings—Negligence—Burden of Proof.*—In an action against a railroad company to recover damages resulting from negligently failing to give timely warning of the approach of one of its trains to a public crossing, the burden is on the plaintiff to prove such negligence.

3. EVIDENCE—*Positive and Negative—Sounding of a Steam Whistle.*—The testimony of a witness who denies that a railroad whistle was sounded on a given occasion is as positive evidence as the testimony of another who affirms the fact, where each has equal opportunity of hearing, and the attention of the former, because of special circumstances, is equally drawn with that of the latter to the sounding of the whistle. The denial of the one and the affirmance of the other produces a conflict of evidence which it is the province of a jury to determine.

4. RAILROADS—*Public Crossings—Looking—Obstructed View.*—A traveller about to cross a railroad, at a public rossing, is excused from the duty of looking for approaching trains when looking would be unavailing on account of obstructions to the view. If injured in attempting to cross under such circumstances the propriety of his going upon the track is a question for the jury to determine.

5. CONTRIBUTORY NEGLIGENCE—*Burden of Proof—Presumption.*—In an action for personal injuries inflicted by a defendant, where the plaintiff has shown negligence on the part of the defendant, if the defendant relies on the contributory negligence of the plaintiff, the burden is on the defendant to prove it, unless it is disclosed by the

plaintiff's evidence, or may be fairly inferred from all the circumstances; and, in the absence of such proof, the person injured must be presumed to have been without fault.

6. RAILROADS—*Public Crossings—Listening—Failure to Stop—Presumption.*—Driving upon a railroad track at a public crossing at a slow gait, without stopping, is not evidence *per se* that the traveller did not listen for approaching trains. The negligence of the railroad company being established, in the absence of evidence to the contrary, the presumption, though slight, is that the traveller did his duty in approaching the track.

7. VERDICTS—*Contrary to Evidence—Appellate Court.*—This court has no power to disturb the verdict of a jury, as contrary to the evidence, unless satisfied that the evidence is plainly insufficient to sustain it.

Error to a judgment of the Circuit Court of Amherst county rendered May 29, 1896, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The evidence tended to show that looking would have been wholly unavailing. If the intestate had left his team and gone to the track and looked, the topography of the country and the curvature of the track were such that he could have seen but a short distance, and by the time he had returned to his team he would have had no better knowledge of the situation than if he had not gone to look.

*Charles M. Blackford,* for the plaintiff in error.

*Caskie & Coleman* and *C. J. Campbell,* for the defendant in error.

RIELY, J., delivered the opinion of the court.

R. Fletcher Bryant was struck and killed on December 10, 1895, by a passenger train of the Southern Railway Company

while crossing its track on the public highway, and this suit was brought to recover from the railway company damages on account of his death. The jury, on the trial, rendered a verdict in favor of the plaintiff for $6,125, and the court entered judgment in accordance with the verdict.

The right of the plaintiff to recover was founded upon the alleged negligence of the railway company in not giving timely notice of the approach of its train to the crossing so as to enable travellers upon the highway to guard themselves against injury, whereby, in consequence of such neglect, the plaintiff's intestate, who was driving his wagon along the highway, and was obliged to cross the railroad track where it intersects the highway, lost his life.

It is well settled law, independent of any statute, that it is the duty of a railroad company to give reasonable and timely warning of the approach of its train to the crossing of a public highway. 2 Wood on Railroads, 1510; and *Johnson* v. *Chesapeake & O. R. Co.,* 91 Va. 177. The public have the same right to use the highway as the railroad company has to use its track, but the law, conceding, from the necessity of the case, the preference and right of way to the railway train, requires that it shall duly warn travellers upon the highway of its approach to the crossing, so that they may protect themselves and their property from a collision, and consequent injury.

The Legislature of Virginia has emphasized this duty of the railroad company for the protection of human life by requiring that a bell and steam whistle shall be placed on each locomotive engine operated on any railway in this state, and that "the whistle shall be at least twice sharply sounded, not less than three hundred yards before a highway crossing is reached," and also in making the company "liable for all damages which shall be sustained by any person by reason of such neglect." Acts 1893-94, p. 827.

The negligence charged against the railroad company was the failure to give timely notice of its approach to the crossing,

and this it was incumbent on the plaintiff to prove, for, unless the company was negligent, there could be no recovery against it for the death of the deceased. Therefore, the first question for consideration is: Did it neglect to give the warning the law requires? Was there a failure to sound the whistle as prescribed by the statute? In determining the question of negligence, we have to consider the testimony upon the principles of a demurrer to the evidence. Code, sec. 3484. These principles are too familiar, and of too frequent application to need to be here stated. *Johnson* v. *Chesapeake & O. R. Co., supra.*

The trainmen (engineer, fireman, and conductor) all testified on the trial that the whistle was sounded at the whistling post established for the crossing by the railroad company, which is about 600 yards from the crossing, and the bell rung, though the engineer was proved to have testified at the coroner's inquest, held shortly after the accident, that he blew the whistle for the crossing on nearing it, and just then saw the heads of the decedent's horses at the crossing. The defendant introduced two other witnesses, who stated very positively and circumstantially that they heard the whistle give the usual signals for the crossing. On the other hand, the plaintiff examined six witnesses (John W. Johnson, Howell Watts, Sherman Smith, Charles Tinsley, Burwell Watson, and Carrington Rose) in respect to this fact, all of whom, with abundant opportunity to hear the whistle if it had been sounded, swore that they did not hear it blow for the crossing.

It is consonant with reason and human experience that the positive testimony of a single witness, whose credibility is unimpeached, that he saw or heard a particular thing at a particular time and place, ought ordinarily to outweigh that of a number of equally credible witnesses, who, with the same opportunities, testify that they did not see nor hear it. The particular thing might have taken place, and yet from inattention they may not have seen, nor heard it, or, though conscious of seeing or hearing it at the moment of its occurrence, may have after-

wards forgotten it from lapse of time or defective memory. In such case, the evidence of the one witness is positive, while that of the many is merely negative. But where a witness, who denies a fact in question, had as good opportunity to see or hear it as he who affirms it, and his attention, because of special circumstances, was equally drawn to the matter controverted, the general rule that the witness who affirms a fact is to be believed rather than he who denies it does not hold good. The denial of the one in such case constitutes positive evidence as well as the affirmance of the other, and produces a conflict of testimony.

We will now examine the testimony of the witnesses for the plaintiff in respect to the blowing of the whistle for the crossing, and see whether it is merely of a negative character, or whether it creates a conflict with that of the defendant.

The testimony of the boy, Carrington Rose, was simply that he did not hear the whistle. He mentioned no circumstance to show that he was listening for it, or that there was anything to direct his attention specially to it. His evidence upon this point was merely negative, and may be left out of consideration.

But this was not true as to the testimony of the plaintiff's other witnesses who testified in respect to this matter. Johnson and Watts passed over this crossing with their teams only a few minutes ahead of Bryant. Johnson was driving his own team; Smith was driving that of Watts; and the latter was walking. As they approached the crossing, Watts went in front of the teams to the track to ascertain whether a train was approaching. Not seeing or hearing any train, the teams were driven on across the track and along the highway, which soon after leaving the crossing turns and runs nearly parallel with the railroad track in the direction from which the train came, and within a short distance of the track. They were familiar with the running of the train; were aware that it was the time, or a little past the time, for it to come along; and were on the lookout for it. All three tes-

tified that it rushed by them without sounding its whistle—without giving any warning of its approach to the crossing. This fact was impressed upon them in the most unmistakable manner. Johnson stated that he was listening for the train, because one of the horses he was driving was very scary; had run off once before, and came very near killing him; that he was not over twice the length of the court-room from the railroad track when the train ran by, and nearer to the whistling post than to the crossing; that the train ran up opposite to him and passed on without whistling; and did not whistle at all until just as it ran into the cut at the crossing. Watts stated that he too was watching for the train, because both of the horses to his wagon, which Smith was driving, were scary and afraid of trains; that he distinctly remembered a conversation which took place between Johnson and himself before the train came along, in regard to their horses being scary; that his horses were frightened by the train as it passed by; and that the whistle was not sounded at all until the emergency alarm was given, when it seemed to him that the train had passed the crossing. Smith testified that he also was listening for the train, knowing that the horses he was driving were scary and afraid of trains, and that if it had whistled for the crossing he would have heard it, but that it did not whistle before it reached the crossing. All three of these men were, for these reasons, listening intently to catch the first sound of the approaching train. They knew that it was due or past due, and were momentarily expecting it, and dreading its approach. With their attention thus fixed upon the coming of the train, and painfully on the alert, they all swore that the train passed by the whistling post for the crossing, where its whistle should have been blown, and rushed past them without sounding the whistle. According to their testimony, the first warning of its approach to the crossing was the danger signals. All the witnesses admitted that these were given. The plaintiff's witness, Johnson, testified that they were given just as the train ran into the cut at the crossing; while

the engineer stated that they were given just as the train, which was running at the rate of 30 or 35 miles an hour, came around the curve, and he saw the heads of Bryant's horses as they moved from behind the bluff on to the track.

Two other witnesses, Charles Tinsley and Burwell Watson, were examined by the plaintiff as to whether the whistle was blown for the crossing or not. They were standing at Amherst depot at the time of the accident, within less than a half a mile of the crossing. They were hackmen, and were waiting for passengers. They were accustomed to hear the whistle when it was blown for the crossing, and were listening for it. Tinsley had an engagement an hour later, and the train being behind time, he was anxious for its arrival, and on the alert for the signal of its approach. He heard no whistle until the danger signals were given. And to the same effect was the testimony of Burwell Watson.

The evidence of these five witnesses, Johnson, Watts, Smith, Tinsley, and Watson, denying that the whistle was sounded for the crossing, is of such positive and circumstantial nature as to raise a direct conflict with that of the defendant's witnesses who affirmed that it was duly sounded, the decision whereof was specially for the jury. In this conflict of testimony, the law requiring that the case shall be heard by this court as upon a demurrer to the evidence, the testimony of the defendant in error must govern, and that of the plaintiff in error be discarded, with the result that it must be concluded by us that due warning was not given of the approach of the train to the crossing, and because of the failure to give it, the defendant company was guilty of negligence.

The negligence of the defendant company being thus established, the plaintiff was entitled to recover, unless his right to do so was defeated by contributory negligence on the part of the deceased. The company claimed that he was negligent in attempting to cross its track without looking to see if the train was coming or listening for its approach.

It is without doubt a general rule that a person about to cross a railroad track—even at a public crossing—must exercise ordinary care and prudence. He must use all his faculties to avoid danger. He should both look and listen. He should look in each direction from which a train could come, and if not in sight, listen for its approach. And if warned by his faculties of the near approach of a train, it is his duty to keep off the track until it has passed by, or no recovery can be had for any injury he may sustain. This is the unquestioned law in every jurisdiction of which we are aware. *Johnson* v. *Chesapeake & O. R. Co.,* 91 Va. 179, and the authorities there cited.

But while this is the general rule, it is not inflexible, nor wholly without exception. It would be unreasonable to require a traveller, upon approaching a railroad crossing over a highway to look, when, by reason of the nature of the ground or other obstructions, he could not see; in other words, when compliance with the general rule would be impracticable or unavailing. Where the view of the track is obstructed, and the railroad company has failed to give notice of the approach of its train to a crossing upon the highway, and a person in attempting to go across the track, not being able to see the train on account of obstructions, and being obliged to act upon his judgment at the time of crossing, is injured, the propriety of his going upon the track under such circumstances is not a question of law to be decided by the court, but a matter of fact to be determined by the jury. 2 Wood on Railroads, p. 1527; Beach on Con. Neg. (2nd Ed.), sec. 196; *Norfolk & W. R. Co.* v. *Burge,* 84 Va. 68; *Smedis* v. *Brooklyn, &c., R. Co.,* 88 N. Y. 13; and *Ormsbee* v. *Boston, &c., R. Co.,* 14 R. I. 102.

It appears from the uncontradicted testimony in this case that the highway along which the deceased was travelling crossed the railroad track at the end of a cut made through a hill, along the bottom of whose slope the highway approached the crossing. The hill extended back in the direction that the train came, and excluded any view from the highway of the

track in that direction. A traveller upon the highway, on ac-
count of the obstruction of the view by the hill, was unable to
see the track in that direction until he got to it, and when stand-
ing in the middle of the track could not, owing to a curve, see
along it further than from 100 to 150 yards. So that Bryant,
on account of the obstacles to his view, was unable to see the
train until it was too late to escape without injury, and had to
rely on the faculty of hearing. But the whistle not having been
sounded, there was nothing to hear, nothing to warn him that
the train was near, for while it was proved that the whistle, when
sounded, could be heard by a person as he came along the high-
way down to the crossing, it was also shown that the nature of
the ground tended to deflect from the highway sound coming
from the direction that the train on this occasion was approach-
ing; and no attempt was made to prove that Bryant, by listening,
could have heard the rumbling of the train or learned of its
approach to the crossing in any other way than from the sound
of the whistle until he got on the track, when, if the train was
then in sight, it would be within 100 to 150 yards of him, and
escape from injury, in view of the high rate of speed of the
train, would be impossible.

It appeared in evidence that Bryant was not moving rapidly,
whereby any noise of the train might have been drowned, but
that he drove slowly down the road to the crossing; that his
horses were in a walk; and that the highway was a dirt road and
free from rocks. Nothing appears in the evidence to show that
he did not listen.

If the defendant company relied upon contributory negligence
on the part of the deceased to defeat a recovery by the plaintiff,
it is well settled in this State, whatever may be the decisions
elsewhere, that the burden was on the company to prove it,
unless such negligence was disclosed by the evidence of the
plaintiff, or might be fairly inferred from all the circumstances;
and in the absence of such proof, the person injured must be
presumed to have been without fault. *B. & O. R. Co.* v. *Whit-*

*tington*, 30 Gratt. 805; *Balto. & O. R. Co.* v. *McKenzie*, 81 Va.
71; *Improvement Co.* v. *Andrew*, 86 Va. 273; *N. & W. R. Co.*
v. *Gilman*, 88 Va. 239; and *Kimball & Fink* v: *Friend, ante,* p.
125. See also *R. Co.* v. *Horst*, 93 U. S., 298; *R. Co.* v. *Gladden*, 15 Wall. 401; and 2 Wood on Railroads, 1455.

It cannot be inferred as a matter of law, under the circumstances disclosed by the record, that because Bryant drove upon
the track without stopping, he did not listen. The instinct of
self-preservation forbids the imputation of recklessness to any
one. Where a traveller is killed at ·a railroad crossing, and the
negligence of the railroad company is established, in the absence
of evidence to the contrary, the presumption is, though perhaps
slight, that the traveller did his duty in approaching the crossing. *Kimball & Fink* v. *Friend, supra.* As has been aptly
said by a learned author in discussing this question: "One
cannot fail to call to mind that contributory negligence is as
distinctly a wrong in the plaintiff as negligence is in the defendant, and that it is as much against the principles of the law to
presume it on the one side as on the other; resulting, therefore,
in the conclusion, that the defendant can no more avail himself
of the one than can the plaintiff of the other." Bishop on Non-
Contract Law, sec. 470.

The third instruction given to the jury by the court at the
instance of the plaintiff, and which the defendant insists was
erroneous, simply affirmed the exception to the general rule
that one before going upon a railroad track must look and listen,
that where, by reason of obstructions to the view, looking is
impracticable and would be unavailing, the failure to look or
see an approaching train before driving upon the track cannot
be considered as contributory negligence. In such a case,
nothing could be gained by looking, and the court committed
no error in giving the said instruction, with the direction that it
be read in connection with the other instructions. *Kimball &*
*Fink* v. *Friend, supra.* The principle of the instruction has
already been herein fully discussed, and nothing further need
be said of it here.

Nor did the court err in overruling the motion for a new trial. The jury saw the witnesses and heard them testify. They also viewed the ground of the accident, and were thereby the better enabled to understand the evidence and apply it. They are, under the law, the appointed triers of facts. The character of the evidence made the determination of the case one peculiarly within their province. Their verdict established that the defendant company was guilty of negligence, and that its negligence caused the accident. The trial court refused to interfere with it. According to the practice of this court, established by a long line of decisions, it has no power to disturb the verdict of a jury, unless satisfied that the evidence is plainly insufficient to sustain it. *Kimball & Fink* v. *Friend, supra.*

Upon an examination of all the facts and circumstances of the case, as shown in the record, we are unable to say that it was plainly insufficient to sustain the verdict of the jury. We cannot, therefore, set it aside and award a new trial.

The judgment of the Circuit Court must be affirmed.

*Affirmed.*