# Richmond.

## THE VIRGINIAN RAILWAY COMPANY v. WILLIAM M. UNDERWOOD, ADMINISTRATOR OF LEATHA UNDERWOOD.

January 17, 1929.

The opinion states the case.

*Williams, Loyall & Taylor, Hall & Buford, Martin & Wingfield* and *N. S. Turnbull, Jr.*, for the plaintiff in error.

*George E. Allen* and *P. G. Jefferson*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This action was brought by notice of motion by the personal representative of Leatha Underwood, deceased, to recover damages for the death of his intestate, caused by the alleged negligence of the defendant railway company. The basis of recovery is set forth in the notice of motion from which we make the following extract:

"That prior to the construction of your railway, the public highway in Charlotte county, Virginia, about two miles southwest of Phenix, ran some three to five hundred feet northeast of the point at which the highway, as it now exists, and as changed by you and your predecessors, the Tidewater Railway Company, crosses your right of way and the tracks of an overhead bridge, and was perfectly safe and convenient, there being no railway then existing to be crossed at grade overhead or underneath.

"That on or about the . . . . . . . . day of . . . . . . . . . . . , 19.., at said point on your right of way in Charlotte county, Virginia, and about two miles southwest of Phenix, you or your predecessor, the Tidewater Railway Company, to whose rights, privileges, franchises and duties you succeeded, with the consent of the Board of Supervisors of Charlotte county, obtained as above set out, changed the location of the public highway—

which formerly ran near and at the point of the location of the said overhead bridge perfectly straight from a point from three to five hundred feet northeast of said overhead bridge to a point from three to five hundred feet southeast of said bridge across your proposed right of way—whereby the highway as changed by you runs in a westerly direction from a point about four hundred and fifty feet northeast of said bridge, and then at a point within about twenty feet of said bridge makes an abrupt turn, almost at right angles, crossing your right of way and tracks on an overhead bridge or crossing, at which point there is a deep cut made by your roadbed sixty feet below the bottom of said bridge or crossing, so that by reason of said change in the highway aforesaid, and the deep cut and overhead crossing constructed by you without taking ordinary precautions or providing any warning, guard rails, mounds or any other protection, or obstruction at the approaches to said bridge, and especially at the northern end of said bridge, you created an extremely dangerous and hazardous situation, which theretofore had not existed, and it thereupon became and was your duty, to do, construct and operate said crossing so as not to impair, impede, or obstruct such highway, and to operate such crossing by permanent and proper structures and fixtures and control the same by such customary and approved appliances and regulations as would best secure the safe passage and transportation of persons and property over and along such crossing.

"That on or about the 6th day of September, 1926, the plaintiff's intestate was travelling along the highway, from Phenix on the way towards Lynchburg, traveling in the rear seat of a five passenger Chevrolet automobile, about midnight, towards Brookneal, which

is in a northerly direction from said crossing; that the plaintiff's intestate was being driven by one D. E. Rakes, who was a careful, experienced, and skillful driver; that neither the plaintiff's intestate nor the said D. E. Rakes was familiar with the road at that point; and that driving over said highway as aforesaid, the plaintiff's intestate, and the said D. E. Rakes approached said crossing shortly after midnight on the day aforesaid, at which time it was dark and the road was obscured by such darkness, and at which time the said Rakes was driving said car at a moderate rate of speed, using all proper care and precaution to stay in said highway, and was using great care and caution, and driving slowly and carefully; that the lights upon said car were on and giving their usual light; that when said plaintiff's intestate and D. E. Rakes approached said bridge at its northeastern end, that is, from the Phenix side, and just before reaching said abrupt turn within a few feet of said bridge, the lights of said car, shining straight ahead, with nothing in the range covered but open and cleared space, all of which indicated that the road continued straight; that as a result of the negligence of the defendant aforesaid, the plaintiff's intestate and the said Rakes failed to see that the said highway turned abruptly towards the south, almost at right angles, within a few feet of the end of said bridge, and the car was driven straight ahead and to the right side or northerly end of said bridge, on your right of way, and before the plaintiff's intestate or the said Rakes became aware of the dangerous turn in said road, or could see that they were off the county highway, the plaintiff's intestate and the said D. E. Rakes and the car in which they were driving, were precipitated from the top of the embankment at the northerly end of said bridge, over into

said cut and to the bottom of your roadbed, a distance of approximately sixty feet, and as a consequence thereof as the car violently struck the rails and cross ties, the plaintiff's intestate was instantly killed."

Upon the trial of the case a verdict was rendered in favor of the plaintiff, the trial court entered judgment thereon and to that judgment this writ of error was awarded. Before stating the facts of the case we will dispose of the contention of the defendant that the burden of maintaining the crossing was upon the highway authorities and not upon the defendant. Section 3886 of the Code which provides for the construction of highways over a railroad contains the following language: "When the crossing is constructed above the track of said railroad the approaches and structures shall be safe, convenient and substantial, and when the crossing is constructed beneath said tracks the said county road and all necessary drains and ditches shall be put in good permanent condition, and the structures supporting the tracks of the railroad shall be safe, permanent and substantial. * * * * *. After said crossing has been constructed the corporation whose track or work is to be crossed shall maintain the same."

In 3 Elliott on Railroads (3d ed.) page 1575, it is said:

"The railway company must erect and maintian such structures as are reasonably necessary to enable travelers to get on, off, and over the crossing in safety. * * *. And where the construction of the railroad caused a cut or fill in the highway so as to make it dangerous for travel unless protected, it will be the duty of the company to erect proper guard rails to keep travelers from falling into the cut or off the embankment. Barriers or guard rails in a proper case are

regarded as a reasonable part of the necessary restoration of the highway to a favorable condition of travel."

Passing upon this identical question in *Virginian Railway Co.* v. *Farr*, 147 Va. 217, 136 S. E. 668, West, J., said:

"In the instant case, the county road is thirty, and the traveled portion thereof twenty feet wide. The company dug a cut across the road ninety-eight feet wide and twenty-two feet deep, over which it built a bridge only eighteen feet wide. The road was on the company's right of way for more than seventy feet from the bridge, and approached the bridge nearly at grade. The company's right of way on each side of the road was level and free from bushes and weeds. There was nothing on the east side of the road to hinder travelers on the highway who might, from any cause, be diverted from the road to the right of way, from going over the edge of the embankment into the cut. While the passage over the crossing may have been, when the bridge was built, reasonably safe for a few slow horse-driven vehicles, it cannot be said to be safe under present day conditions when about 300 fast moving automobiles are passing over the road, night and day, in twenty-four hours.

"It was the duty of the defendant to erect and maintain fences, guard rails, or other obstructions, for the protection of the traveling public against the danger of driving into the cut. Without the cut, or with it properly guarded, the accident could not have occurred.

"In an opinion handed down today in *Norfolk & Western Railway Company* v. *James* [147 Va. 178], 136 S. E. 660, in which the facts are almost identical with those in the instant case, we held the company guilty of negligence in its failure to erect and maintain a

fence, guard rails, or other obstructions near the edge of the embankment at the end of an overhead bridge, for the protection of travelers using the crossing."

Due to the failure of the defendant to erect and maintain such necessary structures as would afford ample protection to the traveling public at the point of accident it was as a matter of law guilty of actionable negligence.

It is also contended by the defendant that the verdict should be set aside and judgment entered for defendant because of the contributory negligence of the deceased. The record shows that D. E. Rakes, the driver of the automobile owned by Leatha Underwood, had been convicted in the circuit court of Lunenburg county of a violation of the prohibition law and had been sentenced to the penitentiary. On Friday preceding the accident, Tom Shook, accompanied by Gatha Josey and others, went to Lunenburg courthouse to see Rakes who was then in jail. On this trip Gatha Josey took with her a hack saw which she threw up into the window of the jail. On Sunday morning Tom Shook, Mrs. Underwood and Gatha Josey returned to Lunenburg jail and Rakes threw a note out of the window to Gatha Josey telling her that he would break out of jail that night and asking her to meet him near Lunenburg courthouse about nine o'clock. On Sunday night about nine o'clock Mrs. Underwood, Gatha Josey, Shook and others went to the neighborhood of Lunenburg courthouse and there found Rakes who had escaped from the jail, and took him in their car. They then returned to the house of Mrs. Josey who was the mother of Gatha Josey and Mrs. Underwood, the plaintiff's intestate.

About twelve o'clock that night they left Mrs. Josey's house, starting for Lynchburg. The party

stopped at Keysville about one o'clock at night for the purpose of getting a tire fixed. Shook left Rakes, Mrs. Underwood and Gatha Josey at a garage on the outskirts of the town and took the car up in the town to a garage for the purpose of getting the tire fixed. Shook was at the garage, separated from the rest of the party for about one hour. After the tire was repaired the party started off to Lynchburg for the purpose of enabling Mrs. Underwood's husband, who was in jail there, to escape from jail. Shook drove the car for about five miles after leaving Keysville and then became sleepy and got on the back seat and laid down. When the over-bridge was reached the left wheel of the car struck just inside the right rail post of the bridge, knocked that loose, shattered the left wheel, broke a heavy brace in two and plunged down the embankment. Why the car was driven over the embankment is not shown by the evidence. Rakes, the driver of the car, was so seriously injured by the fall that he died within a very short time thereafter. Mrs. Underwood was probably instantly killed, for she was dead when the first people who were summoned for help reached the scene of the accident. Gatha Josey, Mrs. Underwood's sister, was not seriously injured, but did not testify in this case. Tom Shook, the only occupant of the car who has testified, was asleep at the time of the accident and knows nothing of the reason why the car left the road.

The map introduced in evidence by the plaintiff shows the general physical situation. The road makes a curve of 32-20 degrees just before the bridge is reached. At a point seventy-eight feet from the bridge there is a ditch or depression along the right side of the road from eight to ten inches deep. On the side of this ditch or depression there were weeds, grass and small

shrubbery which indicated the line of the road. As the bridge is approached the ditch or depression becomes deeper and the level of the road is raised so that at a point ten feet from the bridge the extreme right side of the road is two feet lower than the general level of the road. While there is no fence or barrier at the end of this bridge, there was, at the time of the accident, an upright post two inches by six inches which formed the end of the railing of the bridge. This upright piece was stoutly attached to a beam which forms the support of the end of the bridge, by boat spikes, and attached to the beam was an oak brace six inches wide by two inches thick nailed to the bridge timber by heavy nails. The bridge has a railing about the height of a man's waist running along its entire length, and photographs taken at varying distances show that this brace, as well as the railing of the bridge, can be plainly seen for a distance of approximately 340 feet from the end of the bridge.

There is evidence tending to show that the party passed Charlotte courthouse a short time before the accident going at a terrific rate of speed. In Phenix the car seems to have slowed down. About a mile from the point of the accident the car stopped. It passed the house of a Mrs. Carden who lived near the road and near the point of the accident, going at a very fast rate of speed. After the accident, pieces of fruit jars were found in the cut and around the scene of the wreck. These fruit jars smelled strongly of whiskey.

The law of the case is well settled. Relying upon the contributory negligence of plaintiff's intestate to defeat a recovery, the burden was upon the defendant to prove contributory negligence by a preponderance of the evidence, unless the evidence for the plaintiff

showed such contributory negligence, or unless contributory negligence might be fairly inferred from all the evidence and circumstances of the case. *Southern Ry. Co. v. Bryant*, 95 Va. 220, 28 S. E. 183; *Southern Ry. Co. v. Bruce*, 97 Va. 92, 33 S. E. 548; *Richmond, etc., Co. v. Gordon*, 102 Va. 498, 46 S. E. 772.

It must be conceded that Leatha Underwood and Rakes, the driver of her automobile, were engaged in a joint enterprise and if Rakes was guilty of contributory negligence then his negligence is imputable to Mrs. Underwood. The trial court recognized this principle and without objection gave the following instruction:

"The court instructs the jury that if they shall believe from the evidence that the plaintiff's intestate, Mrs. Underwood, was the owner of the automobile that went into the defendant's cut, that Mrs. Underwood and the other occupants of the car were aiding and participating in the escape of J. C. Rakes from jail, where he was lawfully confined, and that they were on their way to Lynchburg to enable Mrs. Underwood to aid or assist her husband, who was there confined in jail, to make his escape from jail, and that at the time of the accident J. C. Rakes was driving the automobile at the request of or with the permission of Mrs. Underwood the jury are instructed that any negligence or reckless conduct of Rakes in driving said automobile which may have caused or contributed to the accident, is imputable to Mrs. Underwood, and she is as much responsible for the manner in which said automobile was being driven as if she herself had been driving the automobile at the time of the accident which resulted in her injury and death."

It is unfortunate that Gatha Josey, the only person who could have thrown any light on the rate of speed

of the automobile at the time of the accident, or the manner in which it was being driven, did not testify in the case.

In *Chesapeake & Ohio Ry. Co.* v. *Heath*, 103 Va. 64, 48 S. E. 508, it is said:

"The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment, upon mere supposition, without a single known fact."

Whether the negligent act of the defendant in failing to properly guard the approach to the bridge was the sole or even a contributing cause of the accident is a matter of pure conjecture. In *Virginian Ry. Co.* v. *Farr, supra*, relied upon by plaintiff, there was affirmative evidence that the county road, which existed prior to the construction of the railroad, was changed by the railway company, and that the railroad company excavated its cut across the location of an existing road. It was also shown that the road made practically a right angle turn and that the physical condition of the ground at that point was such that one driving along the road would not observe that the road made a turn on account of the fact that the land was free of underbrush and presented the appearance of being a

continuation of the road. It also appeared from direct evidence that the driver, in possession of his faculties, was driving the car slowly and carefully. The circumstantial evidence in the instant case is to the effect that the car immediately before the accident was being driven at a rapid rate of speed. The driver of the car was addicted to the use of intoxicants, and an escaped felon on his way to aid in the escape of the husband of the deceased, who was then confined in jail. The curve in the road just before reaching the bridge was a curve of only 32-20 decrees. The bridge had a guard rail on each side composed of three board planks which were discernable for a distance of 340 feet. At the end of the bridge there was a brace which was six inches wide, two inches thick and fastened to the bridge by boat spikes. This barrier without doubt could be discerned at least eighty feet from the bridge. It also appears that there was a ditch or depression at the side of the road which was ten inches deep at a distance of seventy-eight feet from the bridge. At a distance of fifteen feet from the bridge the depth was about two feet. While some of the witnesses for the plaintiff state that they did not see a car track in this ditch, we think it is conclusively shown by affirmative evidence that the automobile of the deceased ran in this ditch or depression for a distance of seventy-eight feet before it struck the bridge and was precipitated into the railroad cut. The physical facts show that as Rakes approached the bridge he drove the car off the beaten path and through weeds and bushes about a foot high. That the car was running at a rapid rate of speed is, we think, demonstrated by the result both to the car and the bridge at the point of the accident. The automobile driven by Rakes was a light Chevrolet. As a result of the car striking the end of the bridge, a

heavy two by four upright post fastened by spikes was knocked loose from its fastenings, the stanchion at the end of the bridge was broken and the left wheel of the car was shattered. These are physical facts which need no bolstering arguments to uphold them.

There is but one satisfactory conclusion which can be reached in this case and that is that the contributory negligence of the plaintiff's intestate was the proximate cause of the accident. For the reason stated, the judgment of the trial court will be reversed, the verdict of the jury set aside and judgment will be entered in this court for the defendant, the Virginian Railway Company.

*Reversed.*