Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Norfolk and Western Railway Company v. Berta F. James.

### January 20, 1927.

1. Railroads—*Approaches to Overhead Crossing—Duty to Keep Crossings and Approaches Reasonably Safe—Case at Bar.*—Sections 1294-b, subsection 3, and section 1294-d, sub-sections 38 and 39 of the Code of 1904, where a railroad company digs a deep cut across a county road, or changes the location of a road so as to cross the cut, and spans the cut with a bridge, require the company to keep the crossing and approaches thereto in a reasonably safe condition for those traveling over the crossing. Where, as in the instant case, the company built a bridge narrower than the roadway and left a deep chasm extending from the abutment of the bridge in each direction, without giving warning of its existence, and without a fence, guard rail, or other obstruction to prevent travelers, exercising ordinary care, who might for any cause leave the road, from running over the embankment into the cut, it has failed to meet the requirements of the statute, and such failure constitutes negligence on the part of the company.

2. Railroads—*Approaches to Overhead Crossing—Duty to Keep Crossing and Approaches Reasonably Safe—Continuing Duties.*—The duties imposed by section 1294-b, subsection 3, and subsections 38 and 39 of the Code of 1904, are continuing duties and require a railroad company, where the crossing is originally constructed in accordance with the provisions of the statute, to make such improvements and take such additional precautions as the changed conditions may in the future require.

3. Railroads—*Approaches to Bridges and Crossings—Guard Rails—Case at Bar.*—In the instant case plaintiff was injured when the automobile in which she was riding, driven by her husband, ran over the embankment at an overhead bridge down upon defendant's railroad tracks in a deep cut. There were no fences, guard rails or other obstructions to prevent travelers from driving over the embankment. Fog obscured the driver's vision so that he failed to complete the curve leading to the bridge and missed the bridge by eighteen inches.

*Held:* That defendant railroad was negligent in not providing guard

rails or other obstructions to prevent travelers from driving over the embankment; and that the negligence of the railroad proximately contributed to the injury complained of regardless of the negligence of the driver.

4. IMPUTABLE NEGLIGENCE—*Automobile—Driver of Automobile and Passenger—Husband and Wife.*—Where a wife in a car by the invitation of her husband neither had nor exercised any control over her husband as driver of the car, his negligence in driving the car, if any, cannot be imputed to the wife.

5. IMPUTABLE NEGLIGENCE—*Automobiles—Driver of Automobile and Passenger.*—The negligence of the driver of an automobile will not be imputed to a mere passenger, unless the passenger has or exercises control over the driver.

6. NEGLIGENCE—*Contributory Negligence—Knowledge of Danger.*—A plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge of the danger, and conversely he will be deemed to have been guilty, if shown that he knew of the peril, and might have avoided it by the exercise of ordinary care.

7. NEGLIGENCE—*Contributory Negligence—Automobiles—Husband and Wife.*—The better rule seems to be that a wife, riding with her husband, is entitled to rely upon him to look out to a great extent for her safety, and that by so doing she is not chargeable with negligence.

8. NEGLIGENCE—*Contributory Negligence—Questions of Law and Fact—Automobiles—Husband and Wife—Case at Bar.*—In the instant case a wife while in a car driven by her husband was injured when the car ran over an embankment into a railroad cut, the wife knew nothing about automobiles and had never attempted to drive one. She testified that her husband was an experienced and careful driver, and that she had never traveled the road before and had no knowledge of the enbankment.

   *Held:* That the record disclosed no proof that the wife was guilty of negligence as a matter of law and that whether the wife was guilty of contributory negligence was a question of fact for the jury and not a question of law for the court.

9. APPEAL AND ERROR—*Instructions—Appellant not Prejudiced by Refusal of Instructions where the Jury are Fully Informed by other Instructions.*—Where the jury are fully informed by the instructions given, some of them more favorable to appellant than it could have reasonably expected, appellant is not prejudiced by the court's refusal to give other instructions.

10. RAILROADS—*Unprotected Embankments—Lack of Guard Rails—Evidence that in the Past the Enbankment was Protected—Case at Bar.*—In the instant case, an action for injury caused by running over an unprotected embankment down into a railroad cut, two witnesses were allowed to testify that in former years the railroad company had a wire fence near the embankment at the point where the accident

occurred. The court instructed the jury that erection by the railroad company, either before or after the accident, of fences was not to be considered as placing an obligation upon the railroad to erect or maintain such fences.

*Held:* That if the court erred in admitting the testimony of the two witnesses it was rendered harmless by this instruction.

11. Railroads—*Unprotected Embankments—Evidence—Failure of County or State to Erect Barriers—Case at Bar.*—In the instant case, an action for injury incurred when an automobile was driven over an embankment down into a railroad cut, the refusal of the trial court to allow the defendant railroad to prove that there were no fences, obstructions or barriers along embankments or dangerous approaches to bridges over streams along portions of the same highway, away from the railway cut, was not error. The failure of the State to erect such fences or obstructions could not excuse the defendant from the discharge of any duty placed upon public service corporations by statute.

Error to a judgment of the Circuit Court of Bedford county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*F. M. Rivinees, W. R. Staples, S. S. Lambeth, Jr.,* for the plaintiff in error.

*Nelson Sale, Hairston & Almond,* for the defendant in error.

West, J., delivered the opinion of the court.

Berta F. James recovered a judgment against the Norfolk and Western Railway Company for $4,000, for injuries sustained by her when the automobile in which she was riding ran over the embankment, at an overhead bridge, down upon the company's tracks in a cut thirty-five feet deep. The Norfolk and Western

Railway Company is here complaining of that judgment.

On Saturday, September 1, 1923, at three o'clock a. m., Berta F. James left her home in the town of Vinton, near Roanoke, in a Chevrolet automobile owned and driven by D. H. James, her husband. She and her two children occupied the back seat, she being immediately in the rear of her husband and the children on her right. H. T. Carroll, a friend of the family, occupied the front seat with the driver. They were going to visit Mr. James' sister who lived in Bedford county near Thaxton, and left home early because D. H. James and Carroll had arranged to hunt squirrels upon their arrival at their destination. The trip was uneventful until after they had crossed the Blue Ridge mountains and were about two miles from the place of the accident. Here, they ran into a dense fog which settled over the road the remainder of the journey.

The fog was so dense that the driver, with the lights on and in perfect condition, could see the road for only four or five feet in front of his car. The road ran parallel with the Norfolk and Western tracks and about twenty-five feet from the edge of the cut, in which the tracks are located, for two hundred feet, when it makes nearly a right angle curve to the left and approaches the overhead bridge at an elevation. There were no fences, guard rails or other obstructions to prevent travelers, who for any cause left the roadway near the bridge, from driving over the embankment into the cut. James was driving at not to exceed ten miles per hour. His vision was so obscured by the fog that he failed to complete the curve, missed the bridge by eighteen inches, and drove over the embankment down upon the company's tracks in the thirty-five foot cut. The accident occurred at four thirty

a. m.    Each person in the car was injured, but no one was killed.

In 1906, the Norfolk and Western Railway Company double-tracked its road from Norfolk to Roanoke.    In so doing it became necessary for the company to raise and lower the grade, change the location of its line and of the county road crossings in many places.    The company secured from the board of supervisors of Bedford county "permission to make, where necessary, such changes as will enable the said railway company to make such crossings as safe as possible to persons traveling in the county roads."    This permission was granted by the board of supervisors under subsection 3 of section 1294-b, Vol. 1, Pollard's Code 1904.

The overhead bridge at which the accident occurred was erected in 1906.    The law which controlled the terms and conditions of its *construction* is found in subsection 3, *supra*, and in subsections 38 and 39 of section 1294-d, Pollard's Code 1904, which appear in the foot note.[1]

[1]Section 1294-b.  "(3) If any railroad, canal, turnpike, or other public service corporation deems it necessary in the construction of its works to cross any other railroad, canal, turnpike, or works of any other public service corporation, or any county road, it may do so; provided, such crossing shall be so located, constructed, and operated as not to impair, impede, or obstruct in any material degree, the works and operations of the railroad, canal, turnpike, or other works, to be crossed; and provided, such crossing shall be supported by such permanent and proper structures and fixtures, and shall be controlled by such customary and approved appliances, methods, and regulations as will best secure the safe passage and transportation of persons and property along such crossing.    The cost of such crossing, their appliances and apparatus, and of the repair and operation of the same, shall be borne by the party desiring to make the crossing.  *  *  *  *  but any county road, or stream, or water course, may be altered by any such company for the purposes aforesaid whenever it shall have made an equally convenient road or waterway in lieu thereof, the said company having first obtained the consent of the board of supervisors of the county to the alteration of any road or highway."

Section 1294-d.  "(38)  It is hereby declared to be the policy of this State that all crossings of one railroad by another, or of a county road or highway by a railroad, or of a railroad by a county road or highway, shall, wherever reasonably practicable, pass above or below the existing structure.    And every railroad hereafter constructed across another railroad or across a county road or highway, and every county road or highway here-

(a) Was the defendant guilty of any primary negligence?

Subsection 3 (now a part of section 3885, of the Code of 1919) provides that "such crossing shall be supported by such permanent and proper structures and fixtures, and shall be controlled by such customary and approved appliances, methods, and regulations as will best secure the safe passage and transportation of persons and property along such crossing."

Subsection 38 provides that the crossing shall be built "with easy grades" so as to "admit of safe and speedy travel over" the same.

Subsection 39 provides that "at every existing crossing such as mentioned in the last preceding section, the grade of the work last constructed, to the full width of the road crossing, shall be made sufficiently smooth and level to admit of safe and speedy travel over such crossing.   *   *   *   When the crossing is at

after constructed across a railroad, shall, wherever it is reasonably practicable, and does not involve an unreasonable expense, all the circumstances of the case considered, pass above or beneath the existing structure at a sufficient elevation or depression, as the case may be, with easy grades, so as to admit of safe and speedy travel over each.  The provisions of this section shall not apply to crossings in cities or towns, nor to electric railways within or without cities and towns."

"(39)  At every existing crossing, such as is mentioned in the preceding section, the grade of the work last constructed, to the full width of the road crossing, shall be made sufficiently smooth and level to admit of safe and speedy travel over such crossing.  When such improvement is to be made in a railroad it shall be made by the corporation, company, or person operating the same.  When it is to be made in a county road, street or other highway, it shall be made by the corporation whose track is to be crossed, and the expense shall be borne equally by said corporation and by county, city, or town having control of such county road, street, or other highway. When the crossing is at an elevation the approaches and structures shall be safe, permanent, and substantial, and when the crossing is underneath the road to be crossed, the road, street, or highway and all necessary drains and ditches shall be put in good, permanent condition, and the structure supporting the road shall be safe, substantial, and permanent.  Whenever the character of the work to be done on the structures, roads, streets, or highways, drains and ditches cannot be agreed to by the corporation and the county, city, or town bearing the expense of the crossing, the same shall be fixed and determined by the State Corporation Commission.  After said crossing has been constructed the corporation whose track or work is crossed shall maintain the same."

an elevation the *approaches* and structures *shall be safe,* permanent and substantial, * * ." (Italics ours.)

[1] Giving to these statutes a reasonable construction, it seems clear that the law, where a railroad company digs a deep cut across a county road, or changes the location of a road so as to cross the cut, and spans the cut with a bridge, requires the company to keep the crossing and approaches thereto in a reasonably safe condition for those traveling over the crossing. Where, as in the instant case, the company builds the bridge narrower than the roadway and leaves a deep chasm extending from the abutment of the bridge in each direction, without giving warning of its existence, and without a fence, guard rail, or other obstruction to prevent travelers, exercising ordinary care, who might for any cause leave the road, from running over the embankment into the cut, it has failed to meet the requirements of the statute, and such failure constitutes negligence on the part of the company.

[2] The duties imposed by the statutes are continuing duties and require a railroad company, where the crossing is originally constructed in accordance with the provisions of the statute, to make such improvements and take such additional precautions as the changed conditions may in the future require. *Charlottesville* v. *Southern Railway Company*, 97 Va. 430, 34 S. E. 98; *Virginian Railway Company* v. *Farr, post,* page 217, 136 S. E. 668, decided today.

In *Charlottesville* v. *Southern Railway Co., supra,* Judge Buchanan, speaking for the court, said: "In the view we take of this case it is unnecessary to decide whether or not the original crossing was constructed in accordance with the provisions of that statute. If it had been, it does not follow that the crossing is now

such a one as the law required.  The duty of a railroad
company in such case is a continuing one.  It does
not fulfil its whole obligation by putting the highway
in such a condition at the time the railroad is built
that the crossing does not impair the safety, or impede
or endanger the passage or transportation of persons
or property along the highway, nor by putting and
keeping it in such a condition as would have accom-
plished that end if the conditions and circumstances,
existing at the time the railroad was built, had con-
tinued.  The legislature intended to provide for all
time against any obstruction which would impair the
safety, or impede or endanger the passage or transpor-
tation of persons or property along the highway beyond
what is authorized by the statute.  If the population
of the neighborhood or the use of the highway so
increase that the crossing, originally adequate, is no
longer so, it will be the duty of the railroad company
to make such alteration in the crossing as the changed
conditions require.  To construe the statute otherwise
might, and often would, result in seriously impairing
the rights of the public in the highways, and such a
construction will not be given a statute in derogation
of common right, unless plainly expressed or necessarily
implied.  The doctrine that the duty of the railroad
company is a continuing one is fully sustained by the
authorities."

In *Strange* v. *Bodcaw Lumber Co.*, 79 Ark. 490,
96 S. W. 152, 116 Am. St. Rep. 92, the court said:
"The law is now well settled that it is unlawful to make
an excavation, or to put a dangerous obstruction of
any kind adjoining the public highway, and leave it
in a condition to endanger the safety of those who are
traveling thereon, and who, themselves, are in the
exercise of ordinary care.  When one makes an excava-

tion of that kind on his own ground adjoining the public highway, he should exercise due care to protect the public against the danger of accidents caused by such excavation, and, if necessary, should erect a fence or guard rail for that purpose."

In *B. & O. Ry. Co.* v. *Botler,* 38 Md. 568, note in 14 A. L. R. 1403, plaintiff missed the entrance of the bridge built by the railroad company, while attempting to cross the bridge on a dark night. The court held that "the railway company was bound to protect the edges of the embankment, so as not to render the approaches unsafe to persons who might miss the way at night."

In the instant case the right wheel of James' car had only two and one-half feet and his left wheel only eighteen inches to travel from the road to the edge of the cut where they went over. When his left front wheel was going in the cut his hind wheels were six feet in the road.

In *Abbott* v. *Wyandotte County,* 94 Kan. 553, 146 Pac. 998, the facts were similar to those in the instant case, except the ground was covered with snow and the bridge spanned a creek instead of a railroad cut. The court said: "The purpose of the bridge was to carry traffic brought up to it over the stream. It was so located and constructed, however, with respect to the stream and to the highway, that travelers using the highway with due care might miss the entrance and plunge over the declivity. Therefore, the bridge itself was incomplete and defective in construction."

In an opinion handed down today in *Virginian Ry. Co.* v. *Farr, post,* P. 217, 136 S. E. 668, in which the facts are almost identical with the facts in the instant case, we have held that the Virginian Railway Company was negligent in failing to erect a fence, guard rails, or

other obstructions near an overhead bridge, to prevent travelers using ordinary care, who might leave the roadway, from running over the embankment into the railroad cut.

If the railroad company, in the instant case, had not dug the chasm across the county road, or had erected a fence, guard rails, or other obstructions, to warn and prevent travelers on the highway from driving over the embankment, the accident would not have occurred.

[3] For the foregoing reasons, and for the reasons stated in the *Virginian Railway Case, supra,* we are of opinion that the defendant company was negligent in not providing guard rails, or other obstructions, to prevent travelers on the highway from driving over the embankment; and, without passing upon the question whether the driver was negligent, that the negligence of the company at least proximately contributed to the injury complained of.

[4, 5] (b) Could the negligence of the driver, if any, be imputed to the plaintiff? Was the plaintiff personally guilty of any negligence?

Mrs. James was in the car by the invitation of her husband, and she neither had, nor exercised, any control over him as the driver of the car. Under such circumstances, his negligence, if any, cannot be imputed to her.

In *Virginia Ry. & P. Co.* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838, Prentis, J., speaking for the court, said: "The doctrine of imputable negligence has been discussed, and the books are full of cases dealing with the question. There are some conflicts in the decisions, but it may be regarded as settled by the overwhelming weight of authority that the negligence of the driver of an automobile will not

be imputed to a mere passenger, unless the passenger has or exercises control over the driver. The negligence of the servant is imputed to the master, because the master employs and can discharge the servant and direct his actions. It seems to be well settled that the negligence of a husband driving an automobile is not, as a general proposition, imputable to his wife, merely because of the marital relation; nor is the negligence of the driver of an automobile imputable to his guest merely because he is riding with him by invitation." *Anthony* v. *Kiefner*, 96 Kan. 194, 150 Pac. 524, L. R. A. 1915-F, 876, Ann. Cas. 1916-E, 268; Ann. Cas. 1912-A, 649; *Reading Township* v. *Telfer*, 57 Kan. 798, 48 Pac. 134, 57 Am. St. Rep. 355, 110 Am. St. Rep. 289; *Schultz* v. *Old Colony R. Co.*, 193 Mass. 309, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402; *Wachsmith* v. *B. & O. Ry. Co.*, 233 Pa. St. 465, 82 Atl. 755, Ann. Cas. 1913-B, 679; *St. Louis & S. F. R. Co.* v. *Bell*, 58 Okl. 84, 159 Pac. 336, L. R. A. 1917-A, 543.

Mrs. James' right to recover can be defeated only by her own negligence. She and her two small children were seated on the back seat. She had no knowledge of and had never attempted to drive an automobile. She says her husband was an experienced and careful driver, and she had a right to trust him to take her and the children over the road in safety. She was not required to direct him from the back seat as to how he should drive or what speed he should make, unless she knew, or was charged with notice, of the danger. She had never traveled over the road before and had no knowledge of the existence of the bridge or the deep chasm at the end of the abutment.

[6] In *Appalachian Power Co.* v. *Hale*, 133 Va. 428, 113 S. E. 711, 714, this court, quoting with approval

from 20 R. C. L. 107-8, said: "*   *   A plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge of the danger, and conversely he will be deemed to have been guilty, if shown that he knew of the peril, and might have avoided it by the exercise of ordinary care."

In the *Gorsuch Case, supra,* at page 661 (91 S. E. 634), Judge Prentis says: "She had no reason to distrust her husband's skill or carefulness, and notwithstanding the advances made by modern women towards political and economic independence of man, it still remains true that the normal woman married to the normal man recognizes the obligation of obedience contained in the marriage vow, and observes the Pauline injunction to remain subject to her husband, as is suggested in *Reading Township* v. *Telfer, supra;* Ann. Cas., Vol. 22, 1912-A, 649."

In *Director General* v. *Lucas,* 130 Va. 212, 217, 107 S. E. 675, 677, Prentis, J., delivering the opinion of the court, says: "It is contended that some duty devolved upon plaintiff (a passenger on the rear seat of defendant's automobile) to warn and guide defendant as to his route of travel, his speed, etc., and that neglect to discharge that duty constituted such contributory negligence as to defeat recovery.

"But a duty to give such advice implies a duty to heed it, and the rear seat driver is responsible for enough accidents as the score stands without the aid of judicial precedent. The place for a passenger who knows better than a driver of a car, when, where, and how it should be operated, is at the wheel."

[7] In Berry on Automobiles (2d ed.), page 367, the law is stated thus: "The better rule seems to be that a wife, riding with her husband, is entitled to rely upon him to look out to a great extent for her safety,

and that by so doing she is not chargeable with negligence." Again, "common sense would dictate that when a wife goes riding with her children in a rig driven by her husband, she rightfully relies on him not to drive so as to imperil those in his charge. The law does not depart from common sense by requiring her, under the circumstances shown here, to impugn her husband's ability to drive and assume the prerogative to dictate to him the manner of driving." *William* v. *Withington*, 88 Kan. 809, 813, 129 Pac. 1148; *Denton* v. *Mo., Etc., Co.*, 155 Pac. 812.

[8] The record discloses no proof that the plaintiff, Mrs. James, was guilty of negligence, as a matter of law. Whether she was guilty of contributory negligence was a question of fact for the jury and not a question of law for the court.

The third and fourth assignments of error relate to the granting and refusal to grant instructions.

On motion of the plaintiff the court gave instructions "A," "B," "C," "D," and "E," and refused to give instructions 7 to 16, inclusive, offered by the defendant, but gave instructions 1 to 5 on motion of the defendant.

The instructions granted read as follows:

A "The court instructs the jury that if they believe from the evidence that the railway company made a dangerous excavation on its ground, adjoining the public highway and contiguous thereto, it should exercise due care to protect the traveling public against the dangers of accident, which might reasonably be expected to be caused by reason of such excavation, and if necessary should erect a fence, barrier or some obstruction for that purpose, and if it fails to do so, it is liable for injuries resulting from its negligence, if the party injured exercises due care for her own protection."

B. "The court instructs the jury that even though they may believe from the evidence that the road in question was obscured by fog or darkness at the time of the accident, traveling under such conditions is not of itself evidence of a want of due care on the part of the plaintiff, for a public highway may be used by a traveler in the darkest night, and such traveler has the right to presume that the road is in a reasonably safe and suitable condition for travel."

C. "The court instructs the jury that it was a duty owing by the defendant to the plaintiff to construct and maintain the bridge and the approaches thereto in a manner so that same would be reasonably safe for travelers exercising reasonable care in the use of the public highway, and if they believe that such bridge or approaches thereto were not so constructed and maintained, as that a careful and prudent traveler exercising ordinary care, using and traveling upon such highway, would have been reasonably safe, and the plaintiff was injured by the failure of said railway company so to keep and maintain said approaches, the jury must find for the plaintiff such damages as it has been shown she has sustained, not exceeding $5,000.00."

D. "The court instructs the jury that if they believe from the evidence that the plaintiff was riding in an automobile driven by her husband, who was the owner of such automobile, and over which she neither assumed nor exercised any control, and over which she had no control, and she is injured without negligence on her part, even though they may believe that the husband, who was driving the car at the time, was guilty of contributory negligence so as to prevent him from recovering damages for any injuries he may have sustained, this does not affect the plaintiff's right to recover in this case, as the negligence of the husband, if any, cannot as a matter of law be imputed to her."

E. "The court instructs the jury that if they believe from the evidence that the plaintiff is entitled to recover damages, then in estimating the damages sustained by her they should take into account the bodily injuries sustained by the plaintiff, the mental suffering, the pain undergone, the effect on the health and nervous system of the sufferer according to its degree and its probable duration as likely to be temporary or permanent, or such of them as they believe exist or existed, and fix such damages at any amount they may believe warranted by the evidence in that case not in excess of five thousand dollars ($5,000.00)."

1. "The only duty owing by defendant to plaintiff was to construct and maintain the approaches to the overhead bridge reasonably safe for travelers exercising ordinary care within the highway, and if they believe that said approaches were so constructed and maintained as that a careful and prudent traveler exercising ordinary care within the highway would have been reasonably safe, then you must find your verdict for the defendant."

2. "If the jury believe from the evidence that an ordinary prudent traveler, going along the highway in question at the time and place of the plaintiff's accident, would by exercising reasonable care and caution have traveled safely over said bridge, then you must find your verdict for the defendant."

3. "The court instructs the jury that the erection of fences by the railroad company, either before or after the accident, is not to be considered by the jury as placing an obligation upon the railroad company to erect or maintain such fences."

4. "The court instructs the jury that the plaintiff, Berta F. James, notwithstanding the fact that her husband was driving the automobile at the time of the

accident in the notice of motion described, was required by law to exercise reasonable care for her own safety, having reference to the surrounding circumstances and conditions at the time and place of such accident.

"The degree of care required, or what may be considered reasonable care, will vary with the facts of each case. A traveler must always exercise care proportionate to the known danger.

"The law does not permit any one to shut his or her eyes to danger in blind reliance upon the unaided care of another, without assuming the consequences of the omission of such care.

"If the jury shall believe from the evidence that the plaintiff did not use such reasonable care, or if the jury shall believe from the evidence that the driver of said car was guilty of negligence which proximately contributed to the accident, and that the plaintiff acquieced in the negligent acts of the driver, or had knowledge of the danger, and accepted the risk by continuing to ride in the automobile, or without protest, remonstrance or other effort to reduce such risk, they shall find for the defendant."

5. "The court instructs the jury that at the date of the construction of the overhead bridge known as Price's crossing and the roadway leading thereto, to-wit, in the year 1906, the law of this State permitted a railroad to change the course of a turnpike or county road, in order to avoid a crossing or frequent crossings, the change to be made in such manner and on such terms as might be agreed upon by the railroad company and the county having charge of such road.

"And in order to recover against the defendant in this action, it is necessary that the plaintiff should first prove that the new roadway and crossing were not constructed in the manner and upon the terms required

7

by the agreement between the Norfolk and Western Railway Company and the county of Bedford; and if the plaintiff has failed to furnish proof of any such agreement, and the violation of the terms thereof by the railway company, they shall find for the defendant."

[9] After careful consideration, we are of the opinion that these instructions fully informed the jury as to the law applicable to the facts in the case. Some of those granted on motion of the defendant were more favorable to it than it could reasonably expect. Under the circumstances the petitioner was not prejudiced by the court's refusal to give other instructions.

[10] The fifth assignment of error involves the action of the court in allowing two witnesses to testify that in former years the railroad company had a wire fence near the embankment at the point where the accident occurred. If the court erred in admitting this testimony, it was rendered harmless by instruction No. 3, given the jury on motion of the railway company.

The grounds of the sixth assignment of error are not stated in the petition and cannot be considered.

[11] The seventh assignment of error relates to the court's refusal to allow the defendant to prove that there were no fences, obstructions or barriers along embankments or dangerous approaches to bridges over streams along other portions of the same highway, away from the railway cut. The failure of the State to erect such fences or obstructions could not excuse the defendant from the discharge of any duty placed upon public service corporations by the statute. This assignment is without merit.

The ninth assignment of error is to the court's action in overruling the defendant's demurrer to the plaintiff's notice of motion. This assignment has been sufficiently covered by our discussion of the questions of primary, contributory and imputed negligence.

This brings us to the remaining assignment of error, No. 8, which challenges the action of the court in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

We have considered at some length the law and the facts in the case, and feel that a further discussion of the evidence, in detail, would prove unprofitable.

The questions of the defendant's negligence and the plaintiff's contributory negligence were properly and fairly submitted to the jury and they have found against the defendant. There is evidence sufficient to support their verdict. The judgment is presumed to be correct and we find nothing in the record to warrant us in disturbing it.

*Affirmed.*