Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## VIRGINIAN RAILWAY COMPANY V. HELEN B. FARR.

### January 20, 1927.

1. RAILROADS—*Crossings—Overhead Bridges—Safety of Travelers on Highways—Duties of the Railroad—Duty a Continuing One.*—Under Code of 1904, subsections 38 and 39 of section 1294-d, and subsection 3 of section 1294-b (now section 3885 of the Code of 1919) in regard to the change in the location of county roads and the building of overhead bridges and the approaches thereto by railroad companies, the crossings must be so constructed and guarded by the railroad that persons using ordinary care traveling the road may pass over the crossing in safety. The requirements of the statute are not met by simply building a convenient road and erecting a crossing. The railroad's duties are continuing and require that the precautions taken shall be increased to meet the changed conditions as they may arise.

2. RAILROADS—*Crossings—Overhead Bridges—Safety of Travelers on Highways—Duties of Railroad—Changed Conditions—Case at Bar.*—In the instant case, an action for injuries incurred in an automobile accident at an overhead crossing, while the passage of the highway over the railroad on the overhead bridge may have been, when the bridge was built, reasonably safe for a few slow horse drawn vehicles, it could not be said to be safe under present day conditions when about three hundred fast moving automobiles were passing over the road night and day in twenty-four hours, and under Code of 1904, subsections 38 and 39 of section 1294-d, and subsection 3 of section 1294-b of the Code of 1904 (now section 3885 of the Code of 1919) the failure of the railroad to make the crossing safe was primary negligence.

3. RAILROADS—*Crossings—Overhead Bridges—Safety of Travelers on Highways—Fences or Guard Rails at Cuts.*—Where, to avoid a grade crossing, a railroad changed the location of a highway and constructed an overhead bridge for the highway to cross the railroad upon, it was the duty of the railroad to erect and maintain fences, guard rails, or other obstructions, for the protection of the traveling public against the danger of driving into the cut; and in the instant case, an action by plaintiff for injuries sustained when the automobile in which she was driving ran over the edge of the cut near the end of the overhead bridge, as without the cut or with it properly guarded the accident could not have occurred, the negligence of the railroad was the proximate cause of the injury complained of.

4. RAILROADS—*Crossings—Signboards.*—Where there is nothing to put the traveler on notice that he is approaching a railroad, or where the view is obstructed, the railroad should put up signboards.

5. AUTOMOBILES—*Imputable Negligence—Driver and Passenger.*—The negligence of the driver of an automobile cannot be imputed to his guest who neither had nor exercised any control over him.

6. NEGLIGENCE—*Contributory Negligence—Unknown Dangers.*—A plaintiff cannot be held guilty of contributory negligence for failure to guard against danger of which he has no knowledge, or as to which he has not been put on notice.

7. AUTOMOBILES—*Contributory Negligence—Passenger—Case at Bar.*—The instant case was an action by plaintiff for injuries received when the automobile in which she was riding ran over the edge of a railroad cut near the end of an overhead bridge. Plaintiff did not know of the existence of the bridge or the cut, she neither had nor exercised any authority or control over the car or the driver. She possessed no knowledge of the car or how to operate it. She looked ahead but saw nothing to indicate danger until she saw the cut. Immediately the driver applied the brakes to the car.

   *Held:* That plaintiff was not guilty of contributory negligence.

8. IMPUTABLE NEGLIGENCE—*Joint Adventure—Passenger and Driver of Automobile—Case at Bar.*—In the instant case plaintiff was a passenger in a car driven by its owner. Plaintiff and the owner of the car were on their way to a certain race meeting where the owner of the car had a horse entered. The race horse and the car belonged to the owner of the car. Plaintiff owned no interest in either nor in the result of the races. She did not know how to drive the car, and was incapable of directing the owner how to drive. She was not his principal, nor was he in any sense her agent, but her host. He was going to the races to see his horse run; she was going as his guest for the pleasure of an outing.

   *Held:* That plaintiff and the driver of the car were not engaged in a joint enterprise.

9. IMPUTABLE NEGLIGENCE—*Joint Adventure—Driver and Passenger in an Automobile.*—The joint enterprise which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim *"Qui facit per alium facit per se,"* is applicable.

10. CROSSINGS—*Accidents—Evidence—Fences or Barriers—Rules and Regulations Adopted by the State Highway Commission—Case at Bar.*—In the instant case, an action by plaintiff for injuries incurred when the automobile in which she was riding ran over the edge of a cut near the end of an overhead bridge, there was no reversible error in the action of the court in admitting the evidence of a witness as to the

alleged custom of erecting fences or barriers along highways, at railroad crossings; nor in the ruling of the court in refusing to allow in evidence the rules and regulations adopted by the State Highway Commission. There was some evidence tending to establish the custom of erecting fences and barriers at railroad crossings, and it was proper for the jury to consider it for what it was worth. The rules and regulations of the State Highway Commission could not relieve the railroad company of any duty imposed upon it by the State.

11. CROSSINGS—*Duty of the Railroad—Fences, Barriers and Warnings—Instructions—Case at Bar.*—The instant case was an action by plaintiff for injuries incurred when the automobile in which she was riding ran over the edge of a cut near the end of an overhead bridge and fell to the tracks of defendant railroad. The court instructed the jury that it was the duty of the railroad to erect and maintain continuously such structures as are reasonably necessary to enable travelers to get on and over its crossings in safety and that if in the present case the jury believed that there was a cut across the highway such as, under the surrounding circumstances, would make it dangerous for travelers unless protected, and that the said defendant company failed to erect and maintain proper fences, or guard rails, or barriers, and readily seen warnings or signs, to prevent travelers using ordinary care from falling into such cut, and that such failure was a proximate cause of the plaintiff's injury, they should find for the plaintiff.

*Held:* No error.

12. AUTOMOBILES—*Imputable Negligence—Driver and Passenger—Instructions—Case at Bar.*—In the instant case, an action by plaintiff for injuries sustained in an automobile accident when she was riding in the car of another driven by its owner, an instruction that if the automobile was driven by the owner and plaintiff neither assumed nor exercised any control over the driver or the car and she was injured without negligence on her part, she might recover although the driver was guilty of contributory negligence, was not erroneous.

13. RAILROADS—*Crossings—Unguarded Cut—Action of Public Authorities—Instructions—Case at Bar.*—In the instant case, an action for injuries sustained by plaintiff when the car in which she was riding ran over the edge of an unguarded cut near the end of an overhead bridge and fell upon the tracks of the defendant railroad, an instruction "that what the county or State authorities may have done, or may not have done, for the protection of travelers at or near the overhead bridge in question, does not relieve the defendant company from any duty which the law imposed upon it" was not erroneous.

14. DAMAGES—*Mental and Physical Suffering and Effect on Health and Nervous System.*—In an action for personal injuries, an instruction that if the jury found for the plaintiff they might take into account in estimat-

ing the damages sustained by her, "the bodily injuries sustained by the plaintiff, the mental suffering, the pain undergone, the effect on the health and nervous system of the sufferer according to its degree and its probable duration as likely to be temporary or permanent, or such of them as they believe exists or existed, and fix such damages at such just and reasonable amount as they may believe from the evidence in this case will be sufficient to compensate her for such injuries," was not erroneous.

15. RAILROADS—*Crossings—Action Against Railroads for Injuries Sustained at Crossing—Negligence of Railroad Proximate Cause—Instructions— Case at Bar.*—The instant case was an action by plaintiff for injuries incurred when the automobile in which she was riding ran over the edge of an overhead cut near the end of a bridge and fell upon the tracks of defendant railroad. An instruction to find for defendant if the jury believed "that a proximate cause of the accident was the negligence of the driver of the automobile," unless they further believed from the evidence that the defendant was itself guilty of the negligence complained of in the notice of motion, and that such negligence proximately contributed to the accident, was not erroneous.

16. RAILROADS—*Crossings—Duty of Railroad to Erect Barriers, Signs, Etc.— Case at Bar.*—In the instant case, an action by plaintiff for injuries when the automobile in which she was riding ran over the edge of a cut near the end of an overhead bridge and fell upon the tracks of defendant railroad, an instruction that "the duty of the defendant to provide signs, barriers, guard rails or other means for the protection of travelers at said crossings depends upon whether a person of ordinary prudence would provide such signs, barriers, guard rails, or other means for the protection of travelers at its crossing" was not erroneous.

17. RAILROADS—*Crossings—Safety of Passengers on Highways—Code of 1904, Section 1294-b, Subsection 3 (now Code of 1919, Section 3485) and Section 1294-d, Subsections 38 and 39.*—Where under the Code of 1904, section 1294-b, subsection 3 (now Code of 1919, section 3485) and section 1294-d, subsections 38 and 39, a railroad has made a new road as convenient as the old one and the same has been accepted by the board of supervisors of the county and has constructed a bridge across the cut in which its tracks were located, its duty to the public is not ended. The railroad's duty is a continuing one to keep the crossings safe for persons using ordinary care.

Error to a judgment of the Circuit Court of Lunenburg county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Williams, Loyall & Tunstall, H. T. Hall* and *Martin & Wingfield, W. C. Plunkett,* and *N. S. Turnbull, Jr.,* for the plaintiff in error.

*Watkins & Brock,* for the defendant in error.

WEST, J., delivered the opinion of the court.

Helen B. Farr was injured when the automobile in which she was riding ran over the edge of a cut near the end of an overhead bridge, and fell a distance of twenty-two feet upon the tracks of the Virginian Railway Company. She recovered a judgment against the company for $10,000, to which this writ of error was allowed.

When the Virginian railroad was constructed through Lunenburg county in 1906, the Tidewater Railway Company, predecessor of the Virginian Railway Company, in order to avoid a grade crossing, secured permission from the board of supervisors of the county to make a change in the location of the public road just west of Meherrin. The old road crossed the company's right of way practically at grade and at an angle of forty-five degrees. The new road leaves the old road at a point one hundred feet south of the company's track and runs parallel therewith, eastward, for about 500 feet, and then makes a right angle curve to the left and crosses the track on an overhead bridge which spans a cut twenty-two feet deep. The new road again intersects the old about 300 feet north of the bridge.

Helen B. Farr resided in New York City and worked as a corsetiere, except during the summer months

when she looked after the rooms in a hotel at Asbury Park, New Jersey.    M. E. Sexton was her acquaintance and friend, who owned one or more race horses and lived at Asbury Park.    Sexton's horse was in the races at three county fairs in North Carolina.

Mrs. Farr, being acquainted with some other ladies who were going, in other conveyances, to attend the races, accepted the invitation of Mr. Sexton to accompany him on the trip, as his guest.    They traveled alone in a Franklin roadster, and attended the races at Oxford, Concord and Greensboro.    The car was owned and driven by Sexton, who was an experienced and careful driver.    Mrs. Farr had no knowledge of an automobile, could not drive a car and had no authority or control over the one in which she was riding.    On October 22, 1924, they were traveling along the county road, now a State highway, above referred to on their return home.    Neither of them had ever been over the road before.    About six-fifteen in the afternoon it was getting dark and the road was dusty.    Upon inquiry, they were informed that the nearest village was Meherrin, about one mile ahead of them.    They drove on and soon came to the right angle curve in the road.    According to Mrs. Farr's testimony, they were proceeding with all proper caution, going at not to exceed ten or fifteen miles per hour, but for some reason, just before the driver fully rounded the curve, his car began to leave the road. The railroad company had not erected any sign or warning or built any fence, guard rail, or other obstruction to make the road safe for those who might accidentally leave the roadbed near the overhead bridge.    When they discovered the open cut, Sexton applied his brakes but was unable to stop the car before it went over the embankment, about ten feet

from the end of the bridge. As a result of the accident, Sexton was instantly killed and Mrs. Farr was seriously injured.

In disposing of the assignments of error, the questions to be considered are:

1. Was the defendant guilty of any primary negligence which was the proximate cause of the accident?

2. If M. E. Sexton was guilty of negligence, can it be imputed to the plaintiff?

3. Was the plaintiff guilty of any negligence which contributed to her injury?

(1) Whether the defendant has discharged the duty it owes to persons traveling the road, depends mainly upon a proper construction of the statutes which regulate the change in location of county roads and the building of overhead bridges and the approaches thereto by railroad companies.

The statutes in force at the time the bridge involved in the case was erected were subsections 38 and 39 of section 1294-d, Vol. 1, Pollard's Code, 1904, and subsection 3, section 1294-b, chapter 54 A, page 655, Vol. 1, Code 1904 (now sections 3884, 3885, 3886, Vol. 1, Code 1919).

Acting under subsection 3, *supra*, the board of supervisors gave the railway company permission to alter the location of the road and build the bridge. Subsections 38 and 39, *supra*, appear at the foot of this page.[1]

---

[1]Section 1294-d. "(38) It is hereby declared to be the policy of this State that all crossings of one railroad by another, or of a county road or highway by a railroad, or of a railroad by a county road or highway, shall, wherever reasonably practicable, pass above or below the existing structure. And every railroad hereafter constructed across another railroad or across a county road or highway, and every county road or highway hereafter constructed across a railroad, shall, wherever it is reasonably practicable, and does not involve an unreasonable expense, all the circumstances of the case considered, pass above or beneath the existing structure at a sufficient elevation or depression, as the case may be, with easy grades, so as to admit of safe and speedy travel over each. The provisions of this sec-

Subsection 3, *supra*, so far as material here, reads as follows:

"If any railroad, canal, turnpike, or other public service corporation deems it necessary in the construction of its works to cross any other railroad, canal, turnpike, or works of any other public service corporation, or any county road, it may do so; provided, such crossing shall be so located, constructed and operated as not to impair, impede, or obstruct, in any material degree, the works and operations of the railroad, canal, turnpike, or other works, to be crossed; and provided, such crossing shall be supported by such permanent and proper structures and fixtures, and shall be controlled by such customary and approved appliances, methods and regulations as will best secure the safe passage and transportation of persons and property along such crossing, and will not be injurious to the works of the company to be crossed. The cost of such crossings, their appliances and apparatus, and of the repair and operation of the same, shall be borne by the party desiring to make the crossing. * * * but any county road, or stream, or water course, may

tion shall not apply to crossings in cities or towns, nor to electric railways within or without cities or towns.

"(39) At every existing crossing, such as is mentioned in the preceding section, the grade of the work last constructed, to the full width of the road crossing, shall be made sufficiently smooth and level to admit of safe and speedy travel over such crossing. When such improvement is to be made in a railroad it shall be made by the corporation, company, or person operating the same. When it is to be made in a county road, street, or other highway it shall be made by the corporation whose track is to be crossed, and the expense shall be borne equally by said corporation and by county, city, or town having control of such county road, street, or other highway. When the crossing is at an elevation the approaches and structures shall be safe, permanent, and substantial, and when the crossing is underneath the road to be crossed, the road, street, or highway and all necessary drains and ditches shall be put in good, permanent condition, and the structure supporting the road shall be safe, substantial and permanent. Whenever the character of the work to be done on the structures, roads, streets, or highways, drains and ditches cannot be agreed to by the corporation and the county, city or town bearing the expense of the crossing, the same shall be fixed and determined by the State Corporation Commission. After said crossing has been constructed the corporation whose track or work is crossed shall maintain the same."

be altered by any such company for the purposes aforesaid whenever it shall have made an equally convenient road or waterway in lieu thereof, the said company having first obtained the consent of the board of supervisors of the county to the alteration of any road or highway."

[1] The statute, subsection 3, requires that any railroad company, desiring to alter the location of a county road or build its tracks across it, shall build an "equally convenient" road in lieu of the old road, and that the crossing shall be so constructed and operated as to "secure the safe passage and transportation of persons and property along such crossing." The legislature intended that the privileges granted public service corporations should be exercised with as little inconvenience and increased risk of danger to the traveling public as are consistent with the enjoyment of the rights conferred. The requirements of the statute are not met by simply building a convenient road and erecting a crossing. The crossing must be so constructed and guarded that persons using ordinary care traveling the road may pass over the crossing in safety. These are continuing duties and require that the precautions taken shall be increased to meet the changed conditions as they may arise.

[2] In the instant case the county road is thirty, and the traveled portion thereof twenty, feet wide. The company dug a cut across the road ninety-eight feet wide and twenty-two feet deep, over which it built a bridge only eighteen feet wide. The road was on the company's right of way for more than seventy feet from the bridge and approached the bridge nearly at grade. The company's right of way on each side of the road was level and free from bushes and weeds. There was nothing on the east side of

the road to hinder travelers on the highway who might, from any cause, be diverted from the road to the right of way, from going over the edge of the embankment into the cut.   While the passage over the crossing may have been, when the bridge was built, reasonably safe for a few slow horse-drawn vehicles, it cannot be said to be safe under present day conditions when about 300 fast moving automobiles are passing over the road, night and day, in twenty-four hours.

[3] It was the duty of the defendant to erect and maintain fences, guard rails, or other obstructions, for the protection of the traveling public against the danger of driving into the cut.   Without the cut, or with it properly guarded, the accident could not have occurred.

In an opinion handed down today in *Norfolk & Western Railway Company* v. *James, ante* p. 178, 136 S. E. 660, in which the facts are almost identical with those in the instant case, we held the company guilty of negligence in its failure to erect and maintain a fence, guard rails, or other obstructions near the edge of the embankment, at the end of an overhead bridge, for the protection of travelers using the crossing.

For the foregoing reasons, and for the reasons stated in the *Norfolk & Western Case, supra,* we are of the opinion that the failure of the Virginian Railway Company to erect and maintain a fence, guard rails, or other obstructions, at the abutment of the overhead bridge and near the edge of the railroad cut, was negligence which was the proximate cause of the injury complained of.

In *Charlottesville* v. *Southern Railway Co.,* 97 Va. 430, 34 S. E. 98, the court, speaking through Judge Buchanan, said: "In the view we take of this case it is unnecessary to decide whether or not the original crossing was con-

structed in accordance with the provisions of that statute. If it had been, it does not follow that the crossing is now such a one as the law requires. The duty of a railroad company in such case is a continuing one. It does not fulfil its whole obligation by putting the highway in such a condition at the time the railroad is built that the crossing does not impair the safety, or impede or endanger the passage or transportation of persons or property along the highway, nor by putting and keeping it in such a condition as would have accomplished that end if the conditions and circumstances, existing at the time the railroad was built, had continued. The legislature intended to provide for all time against any obstruction which would impair the safety, or impede or endanger the passage or transportation of persons or property along the highway beyond what is authorized by the statute. If the population of the neighborhood or the use of the highway so increase that the crossing, originally adequate, is no longer so, it will be the duty of the railroad company to make such alteration in the crossing as the changed conditions require. To construe the statute otherwise might, and often would, result in seriously impairing the rights of the public in the highways, and such a construction will not be given a statute in derogation of common right, unless plainly expressed or necessarily implied. The doctrine that the duty of the railroad company is a continuing one is fully sustained by the authorities." Citing *Cook* v. *Boston*, &c., *R. Co.*, 135 Mass. 185; 10 Am. & Eng. R. R. Cas. 328; *State* v. *St. Paul*, &c., *R. Co.*, 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313; Elliott on Railroads, 599; 2 Wood's Railway Law 979.

In 3 Elliott on Railroads (3d ed.), page 1575, the author says: "The railway company must erect and maintain such structures as are reasonably necessary

to enable travelers to get on, off and over the crossing in safety. * * And where the construction of the railroad causes a cut or fill in the highway so as to make it dangerous for travel unless protected, it will be the duty of the company to erect proper guard rails to keep travelers from falling into the cut or off the embankment. Barriers or guard rails in a proper case are regarded as a reasonable part of the necessary restoration of the highway to a favorable condition of travel."

[4] The same author, in section 1656 of the same volume, says this: "Where there is nothing to put the traveler on notice that he is approaching a railroad, or where the view is obstructed, the railroad should put up signboards."

In *Goldstein* v. *Southern Railway Co.*, 188 N. C. 636, 125 S. E. 177, Goldstein sued the company for damages to himself and his automobile occasioned by the negligence of the defendant in maintaining on its right of way, adjacent to the public road, a deep hole, or excavation, and failing to erect about the same a fence, railing, or other guard for the protection of travelers on the road. Speaking through Conner, J., the court said: "Defendants, of course, are not liable for the slippery condition of the road, nor for the skidding of plaintiff's car. The proximate cause, however, of plaintiff's injury was his falling into the hole on defendant's right of way. If the hole or excavation had not been there, or if a fence or rail had been erected between the road and the hole, the plaintiff would not have been injured."

[5] (2) If it be conceded that the driver of the car was guilty of negligence, such negligence cannot be imputed to the plaintiff. The uncontradicted evidence is that Mrs. Farr was merely a guest of Sexton, the driver of the car, and neither had nor exercised any control over him. Under such circumstances, the driver's negligence cannot be imputed to her.

In *Virginia Ry. & Power Co.* v. *Gorsuch*, 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838, Judge Prentis, speaking for the court, said: "There are some conflicts in the decisions, but it may be regarded as settled by the overwhelming weight of authority that the negligence of the driver of an automobile will not be imputed to a mere passenger, unless the passenger has, or exercises, control over the driver * * * nor is the negligence of the driver of an automobile imputable to his guest merely because of his riding with him by invitation."

In the same opinion, at page 662 (120 Va. 662) he says: "Where a passenger is in a private vehicle by invitation and is exercising no control over the driver, the negligence of such driver cannot be imputed to the passenger. If precluded from recovery, it must be because of his own negligence."

[6] (3) The record fails to disclose any negligence on the part of the plaintiff. A plaintiff cannot be held guilty of contributory negligence for failure to guard against danger of which he has no knowledge, or as to which he has not been put on notice. *Appalachian Power Co.* v. *Hale*, 133 Va. 428, 113 S. E. 711.

[7] Mrs. Farr did not know of the existence of the bridge or the cut. She neither had nor exercised any authority or control over the car or the driver. She possessed no knowledge of the car or how to operate it. She looked ahead but saw nothing to indicate danger until she saw the cut. Immediately the driver applied the brakes to the car. The ground over which the car passed after leaving the roadway was smooth and covered only with grass. It was level with the roadway and, doubtless, to a resident of a city, unaccustomed to viewing strange, dusty roads at night by the headlights of a car, had much the same general appearance as the

roadway itself.   Whether or not M. E. Sexton was guilty of negligence we need not decide. since his negligence, if any, cannot be imputed to the palintiff.

[8]  There is no merit in the contention that Mrs. Farr and M. E. Sexton were engaged in a joint enterprise. The race horse and car belonged to Sexton.   Mrs. Farr owned no interest in either, nor in the result of the races.   She did not know how to drive the car, and was incapable of directing him how to drive.   She was not his principal, nor was he in any sense her agent, but her host.   He was going to North Carolina to see his horse win some money in the races.   She was going as his guest for the pleasure of an outing.

[9]  In *Director General, etc.* v. *Pence's Admr.*, 135 Va. 329, 345, 116 S. E. 351, Judge Kelly, delivering the opinion of the court, said:   "But the 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle.   The rule is founded upon the doctrine of principal and agent.   The passenger must be so related to the driver as that the maxim *'qui facit per alium facit per se* is applicable."

The case of *Washington & Old Dominion Ry. Co.* v. *Zell*, 118 Va. 755, 88 S. E. 309, relied on by the defendant, is easily distinguished from the instant case.   That case was decided before the *Gorsuch* and *Pence Cases*, *supra*.   Zell and Peck, his companion, frequently took pleasure drives together.   The car was owned by Peck, but Zell always got the car out and put it in readiness for the trips.   On the morning of the accident Zell got the car from the garage and cleaned it and put it in order while Peck was dressing and eating breakfast. Each was an experienced driver and Zell frequently drove when Peck was in the car.   On long trips they

would take "turn about at the wheel." Under the circumstances of that case it was held that Zell was not an invited guest, that Zell and Peck, as they used the car for pleasure trips, were engaged in a joint enterprise, and that the contributory negligence of either would bar a recovery by the other.

[10] We find no reversible error in the action of the court in admitting the evidence of the witness, Sparkman, as to the alleged custom of erecting fences or barriers along highways, at railroad crossings; nor to the ruling of the court in refusing to allow in evidence the rules and regulations adopted by the State Highway Commission.

There was some evidence tending to establish the custom of erecting fences and barriers at railroad crossings, and it was proper for the jury to consider it for what it was worth. The rules and regulations of the State High Commission could not relieve the railroad company of any duty imposed upon it by the State. The company owned the land along the embankment and near thereto on each side of the highway upon which it could have erected the necessary barriers, without violating any valid regulation of the Commission.

[11] The court gave the jury the following instructions, on motion of the plaintiff:

"1. The court instructs the jury that the railway company is charged with the duty and the obligation is upon said railway company to erect and maintain continuously such structures as are reasonably necessary to enable travelers to get on and over its crossing in safety, and in the present case, if the jury believes from the evidence that there was a cut across the highway such as, under the surrounding circumstances, would make it dangerous for travelers unless protected,

and that the said defendant company failed to erect and maintain proper fences, or guard rails, or barriers and readily seen warnings or signs to prevent travelers using ordinary care from falling into such cut and that such failure was a proximate cause of the plaintiff's injury, they should find for the plaintiff.

[12] "2. The court instructs the jury that if they believe from the evidence that the plaintiff was riding in an automobile driven by M. E. Sexton, who was the owner of such automobile, and over which she neither assumed nor exercised any control, and over which she had no control, and that she was injured without negligence on her part, even though they may believe that the said M. E. Sexton, who was driving the car at the time, was guilty of contributory negligence so as to prevent him from recovering damages for any injuries he may have sustained, this does not affect the plaintiff's right to recover in this case, as the negligence of the driver, if any, cannot as a matter of law be imputed to her, traveling as his guest.

[13] "3. The court instructs the jury that what the county or State authorities may have done, or may not have done, for the protection of travelers at or near the overhead bridge in question, does not relieve the defendant company from any duty which the law imposed upon it.

[14] "4. The court instructs the jury that if they shall believe from the evidence that the plaintiff is entitled to recover damages, then in estimating the damages sustained by her they should take into account the bodily injuries sustained by the plaintiff, the mental suffering, the pain undergone, the effect on the health and nervous system of the sufferer according to its degree and its probable duration as likely to be temporary or permanent, or such of them

as they believe exists or existed, and fix such damages at such just and reasonable amount as they may believe from the evidence in this case will be sufficient to compensate her for such injuries."

The court gave instruction "H" on motion of the defendant, and of its own motion gave instructions 5 and 6 in lieu of all other instructions offered by the defendant. Instructions "H," 5 and 6 are as follows:

"H. The court instructs the jury that in this, as in all other civil cases, the plaintiff must prove her case and every element thereof, by a preponderance of the evidence; and that if she fails so to do, they must find for the defendant."

[15] "5. The court instructs the jury that if they believe from the evidence that a proximate cause of the accident was the negligence of the driver of the automobile, they shall find for the defendant, unless they further believe from the evidence that the defendant was itself guilty of the negligence complained of in the notice of motion, and that such negligence proximately contributed to the accident."

[16] "6. The court instructs the jury that if, under the evidence and instructions of the court, they find that the defendant should have erected signs or barriers at the point where the accident in which the plaintiff was injured occurred, then the jury are instructed that the duty or obligation of the defendant to provide such signs or barriers, for the protection of travelers at this crossing, depends upon whether or not the trees, underbrush, railroad ties and other objects along the highway south of the bridge at the point where the accident complained of were sufficient to give notice or warning to a driver of an automobile approaching said bridge from the south, in the use of ordinary care and caution, that he was approaching a sharp curve and a dangerous crossing.

"The court further instructs the jury that the duty of the defendant to provide signs, barriers, guard rails or other means for the protection of travelers at said crossing depends upon whether a person of ordinary prudence would provide such signs, barriers, guard rails, or other means for the protection of travelers at its crossing."

[17] We cannot concur with the contention of the defendant, as indicated by the argument and in the instructions offered on its behalf, that having made the new road as convenient as the old and the same having been accepted by the board of supervisors of Lunenburg county, and having constructed a bridge across the cut in which its tracks were located, its duty to the public was ended.

We think the instructions given properly and sufficiently instructed the jury as to the law of the case, and that the defendant (plaintiff in error) was not prejudiced by the court's refusal to give the instructions offered by it.

The verdict of the jury is in accordance with the law, and there is sufficient evidence to support it. The primary negligence of the defendant as the proximate cause of the injury to the plaintiff is fully established. The negligence of the driver, if any, cannot be imputed to the plaintiff. The jury properly found that the plaintiff was not guilty of any negligence on her part.

The jury saw the demeanor of the witnesses who testified, heard all of the evidence, and viewed the scene of the accident. The trial judge has approved their verdict and entered judgment thereon. We find no legal ground upon which to set the judgment aside.

*Affirmed.*