# Wytheville

ORA NEWCOMB V. CHESAPEAKE AND POTOMAC TELEPHONE
COMPANY OF VIRGINIA.

June 13, 1935.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and
Chinn, JJ.

The opinion states the case.

*Robert Hugh Rudd, Charles W. Moss* and *M. Haley Shelton,* for the plaintiff in error.

*McGuire, Riely & Eggleston,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

We have before us upon a writ of error a case in which the plaintiff sued the defendant for damages for injuries alleged to have been received from stepping from her automobile into a depression in the unimproved portion of a street, in the city of Richmond, between the curbing and the paved walkway, on which street there was a gate opening into the plaintiff's back yard. The plaintiff sought to hold the defendant liable for the reason that this depression was at a spot on which the defendant had once maintained a telephone pole.

The defendant had maintained one of its poles at the spot where the plaintiff was injured but six or seven years before the accident it had removed the pole and filled the hole with cobble stones and dirt which was tamped as tightly as possible and a mound was left over the place where the pole had been installed to take care of subsidence which might occur by reason of atmospheric conditions.

The plaintiff with her husband and sister were returning on the night of March 7, 1932, from the theater and in alighting from her car she stepped into loose dirt in the depression and fell forward injuring herself. She was in a delicate condition at the time and suffered a miscarriage and had to undergo an operation and incur hospital and medical expenses.

The case was tried and the jury rendered its verdict for the defendant which was sustained by the court.

█ The plaintiff in her notice of motion for judgment alleged that the defendant removed its pole "leaving an open and unguarded hole on the spot." This alleged condition was not only not proven, but was disproved by the plaintiff herself and her witnesses. The plaintiff and her sister, Mrs. Morien, and the plaintiff's husband testified that the pole had been removed some six or seven years before the accident. The defendant's witness, C. A. Jordan, testified that he had been in the vicinity frequently and, indeed, until about a year before the accident and he saw the place where the hole had been and there was no depression then. The plaintiff's witnesses testified vaguely that some years later than the removal of the pole or some years before the accident a depression had developed at the spot where the post hole was.

█ It is elementary that the litigant coming before this court with the advantage of a jury's verdict is entitled to the reception of the facts, from the evidence, which is most favorable to it.

The evidence entirely justifies the statement that there was no depression at the spot in question during a period of at least five or six years after the hole was filled. The defendant's duty is measured by ordinary care as long as it remained in occupancy or control of the place on the street where its pole was, but when it removed the pole and discontinued any further or other use of the street, its duty was then to use ordinary care to restore the place to its former condition. This it unquestionably did. Beyond this

it devolved upon the city to take care of the condition of its streets.

To say that the defendant, after restoring the place where its pole rested, in the manner in which the evidence reveals that it did, is liable for an accident which happens six or seven years after such restoration, is to place upon it a continuing duty without limitation as to time. This is unreasonable and is not warranted by justice or law.

The evidence discloses that the defendant did all that its legal duty required it to do and our view as to this is not changed by the fact that the defendant's servants, when notified by the plaintiff, a short time before the accident, that a depression had developed at the place, under a mistaken notion of their obligation, repaired the place. This, we think, is alike true as to the action of the said servants in repairing the place a short time after the accident.

The defendant having discharged its duty and having abandoned any further use or interest in the street and having entirely dissociated itself from any occupancy or control of the premises, a new and independent duty cannot be brought into being or created six or seven years thereafter by the altruistic acts of the defendant's servants in mistakenly going beyond the defendant's duty or theirs.

In *City Gas Co.* v. *Lawrence,* 118 Va. 557, 88 S. E. 73, 74, the court quotes as follows from an Arkansas case, *Helena Gas Co.* v. *Rogers,* 98 Ark. 413, 135 S. W. 904, involving excavation in a street, viz: "It is the duty of one making such excavation to use ordinary care to keep and maintain it in a proper and safe condition from the time it is made until it is restored to its condition prior to the making of the same."

After making such quotation, the Virginia court says (118 Va. 557, at page 560, 88 S. E. 73, 74) : "This being so, when did that duty cease to exist? We are of opinion that it continued to exist in the instant case until the defendant discharged such duty by restoring the vestibule to the safe condition it was in prior to cutting the hole."

See the case of *Ford, et al.* v. *Jersey Central Power &*

*Light Co., et al.* (New Jersey Court of Errors and Appeals), 111 N. J. Law 112, 166 Atl. 490, where it is said: "The plaintiff sought to recover damages for injuries sustained in a fall due to an alleged declivity in the gravel adjoining a concrete sidewalk in front of the defendant Greger's premises in Seaside Park. It appears that some years before a pole carrying electric light wires had leaned dangerously and had been removed at Greger's request. Assuming that the proofs do show that it was removed by the Jersey Central Power and Light Company, there is nothing to indicate that any act of its was the proximate cause of the injury. The removal was lawful, and the proofs do not indicate that the work was improperly done. At the time of the accident, some three years after the removal, there was a declivity in the gravel adjoining the sidewalk and a slight break in the cemented portion of the sidewalk. The witnesses called differ in their description of the circumference and depth of the place where the accident occurred. Assuming, however, that the declivity was where the pole had stood, there is nothing to show when the declivity occurred, or that it was due to the failure to properly fill the place where the pole had stood. No witness was called to describe the condition of the place immediately after the completion of the removal or what the condition had been during the intervening years.

"The landowner is liable for faulty construction of a sidewalk, but not for disrepair due to the wear and tear of the elements. *Glass* v. *American Stores Co.,* 110 N. J. Law 152, 164 A. 305. As to the landowner, the evidence discloses nothing more than disrepair due to wear and tear. No evidence was adduced indicative that the New Jersey Bell Telephone Company was in any way responsible for that which occurred. As to the Jersey Central Power and Light Company, the proofs fall short of indicating that any act performed by it was the proximate cause of the injuries sustained. As a basis for liability for the creation and maintenance of a nuisance, the proofs must demonstrate the fact. This they did not, and the nonsuit was proper."

"An abutting owner will not be liable for injuries from the defective condition of a sidewalk because of the fact that he had previously repaired a defect therein, * * *." 43 C. J. 1105.

The following is from the syllabus of the decision of the New Jersey Court of Errors and Appeals in *Rose* v. *Slough*, as reported in 92 N. J. Law 233, 104 A. 194, L. R. A. 1918F, 813: "That an abutting property owner, after injury to a pedestrian by tripping over a paving block raised by roots growing beneath it, has the roots cut and the walk repaired does not establish liability on his part for the injury."

In the opinion it is said: "The circumstance that the defendant, a few days after the accident, employed a contractor to cut away the roots of the tree in order to repair and level the sidewalk, and thus to make it safe, is wholly unimportant. It was not evidential of any legal duty owing from the defendant to the plaintiff, by reason of the presence of the tree in the highway before and at the time the plaintiff was injured. Any citizen may lawfully abate a public nuisance in the highway. The fact, therefore, that the defendant abated a public nuisance created in front of her premises, after the plaintiff was injured, cannot properly raise an inference that she created it, or had any special control over it. She was under no legal duty to put the sidewalk in repair. The fact that she undertook to do so after the accident cannot properly raise an inference of the individual responsibility for the creation of the nuisance, if such existed."

In *Norfolk & W. Ry. Co.* v. *James,* 147 Va. 178, 194, 136 S. E. 660, 665, it was said: "The fifth assignment of error involves the action of the court in allowing two witnesses to testify that, in former years, the railroad company had a wire fence near the embankment at the point where the accident occurred. If the court erred in admitting this testimony, it was rendered harmless by instruction number three, given the jury on motion of the railway company."

The instruction referred to (number three) was as follows (147 Va. 178, at page 192, 136 S. E. 660, 665): "3.

The court instructs the jury that the erection of fences by the railroad company, either before or after the accident, is not to be considered by the jury as placing an obligation upon the railroad company to erect or maintain such fences."

We affirm the judgment of the lower court.

*Affirmed.*